Arthur L. HARRIS, Sr., et al., Appellants,

v.

UNITED STATES of America, Appellee.

No. 15222.

United States Court of Appeals Ninth Circuit.

June 24, 1958.

Rehearing Denied Nov. 6, 1958.

Douglas Badt, Alden F. Houck, Wirin, Rissman & Okrand, Los Angeles, Cal., for appellants.

Laughlin E. Waters, U. S. Atty., Norman W. Neukom, Lloyd F. Dunn, Ray H. Kinnison, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before FEE, CHAMBERS and HAMLIN, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Sixty-seven counts, charging defendants therein named of devising a scheme to use the mail to defraud (18 U.S.C.A. § 1341), and the sixty-eighth count, charging conspiracy to accomplish the substantive offenses (18 U.S.C.A. § 371), were contained in one indictment. Defendants Arthur L. Harris, Sr., Arthur L. Harris, Jr., Charles W. Marshall and Ernest F. Lea have appealed from the judgment of conviction entered on the jury verdict of guilty of conspiracy and of such substantive counts which had not been abandoned and dismissed.

Defendants were charged with entering into a scheme and artifice to defraud persons who might be induced to purchase lots in a subdivision known as Rocket Town, which was located in the Mojave Desert not far from the Inyokern Naval Ordnance Test Station, and to use the mails in connection therewith. The allegations of false representations were specific and fell generally into seventeen classifications. The briefs in this case are voluminous and reflect the tremendous record.

One of the major specifications of error is that there was not sufficient

competent and relevant evidence to establish the offenses charged in the indictment and to connect the appealing defendants therewith. Without a review of the complicated evidence and facts shown thereby, it may be said at the outset that proof was overwhelming that representations, pretenses and promises were made by means of oral statements, writings, circulars, letters, advertisements, bulletins and papers so constructed, worded and expressed as to deceive, and this was done with the intent to deceive and did deceive and defraud numerous people. From the early part of 1949 to October, 1954, there were contracts of sale entered for 2,769 lots. The representations envisioned an expansive building and development program. Up to date of trial not over seven houses had been built on the entire subdivision. The transcontinental highway, represented as under construction and running through Rocket Town, had not been built there or anywhere else.

But defendants do not mean by the specification that no such false representations were made. It would not be possible to maintain such a position in the face of the record. The lot purchasers in great number testified in minute detail in support of all the counts which were submitted to the jury. There was also sufficient evidence from which the jury could have found and did find a single all-inclusive scheme beginning in 1948 and continuing to 1955. The underlying purpose, according to the proof, was the acquisition of raw desert land near the United States Naval Ordnance Test Station and the subdivision thereof and the sales of the lots so produced by false and misleading statements. There was competent evidence that it was intended that the purchasers believe and they did believe that a well organized building campaign and development program was in the process of consummation. There was evidence that defendants organized this scheme with the intent to sell lots and that their interest went no further and that the design was fraudulent from the inception to the end.

There was substantial evidence that the mails were used to carry out the criminal designs.

The objection is here made that the salesmen were not called as witnesses, but only the purchasers, who testified to what the salesmen, not defendants, represented.

■ The Court recognizes that defendants cannot be held simply because of the pattern or similarity of the representations of individual salesmen. The jury might have found that the government had established no connection with defendants because of such parallelism in the sales talk of various individuals. But the writings, literature, lead cards and lulling letters sent out by or under the direction of some of defendants and the manner of usage thereof were such that the jury had a right to consider these as evidence of bad faith and fraudulent intent upon the part of all defendants. All these were questions of fact. While the testimony of the lot purchasers as to representations made to them by various salesmen not indicted were not conclusive, this evidence could be considered by the jury. Neither the admission of this testimony nor the refusal of the court to strike it was error.

■ Some of the written representations indicated that a transcontinental highway was "under construction" and that it passed along the edge of "Rocket Town." There was evidence that in 1947 the California State Legislature brought Route 212 into the state road system. This road ran from Freeman Junction to Pahrump Valley. California Streets and Highways Code, § 512. But the question raised by the representations is whether defendants believed it to be under construction and really believed that it would run through or near Rocket Town. A great deal of evidence was introduced by both sides. It will not be reviewed. Suffice it to say, the question of what defendants represented and what they believed was for the jury. It was not, however, error for the court to allow the jury to be

driven over the supposed route in the year of the trial. It was not error for the jury to see a photograph of a sign warning travelers of dangers to be encountered along the proposed route or for the jury to hear testimony as to these. The road had not been constructed at time of trial, and the jury had the right to consider these matters in determining the good faith of defendants in any representation the jury found they made. Likewise, there was no error in allowing a view of the area and the Naval Station. The jury had a right to see the situation.

■ The court refused to permit the introduction in evidence of findings of fact in a civil case between other parties and on other issues where the written representations were held to be true. These findings were not res judicata as to any defendant. The issue in a criminal case is entirely different in any event. The court permitted the complete exploration of this civil case so far as it related to the good faith of Bandurraga, a defendant not before this Court. The exhibit was properly excluded.

■ Defendants assign as error the fact that the trial court permitted the jury to take notes during the trial and to use such notes during deliberations. Many trial judges strongly disapprove of the practice in question, believing it to be of doubtful, if any, value. Ordinarily it is within the sound discretion of the trial judge and does not constitute error. This Court finds none here. In this case the court carefully instructed the jury in the first instance and in the final charge of the limitations on the use of notes. A similar point is made as to the furnishing to the jury during trial of copies of certain counts of the indictment. The summary count 1 and the conspiracy count 68 were never furnished to that body. The jury were trying these charges. The court had a right to place before them the particular count while the witness was testifying thereto. In this there is no error.

■ This Court accepts the principle that, in a prosecution for making use of the United States mail in carrying out an alleged scheme to defraud the good faith of a defendant, if established to the satisfaction of the jury, is a complete defense. The matter of the exclusion of findings of fact in a collateral civil case has already been dealt with. Defendants complain that the trial court refused to allow defendants to produce evidence of the instructions given by them to one Roche relative to the preparation and publication of advertising material. The first question, excluded on cross-examination of Roche by defendants, was whether in the preparation of one of these advertising items Roche believed "it truly and accurately stated the facts contained therein." Roche was not on trial, and the question called for a conclusion of his which was irrelevant. The second exclusion related to the question of whether either of the Harrises intimated to or gave direction to Roche to "put any information in any advertising matter which the witness [Roche] knew to be untrue." An offer of proof was made after exclusion. There was testimony that the defendants approved and accepted all the material used in advertising. The question and the offer were entirely immaterial.

■ The trial judge did not permit Harris, Jr., to state why he placed the following clause in the contract of sale:

"No agreement has been made by seller to rent or resell property herein described, or any portion thereof."

This was not error. The contract was signed by numerous lotholders who testified. Many of them said they had not read the contract. The document spoke for itself. The scheme charged in the indictment was to mislead persons into buying lots. It is obvious that this clause in the contract was to remove positively any obligation to take the property off the hands of the purchasers. Notwithstanding this written provision, one of the representations concerning which many witnesses testified was that the company was about to establish a resale department, which was never done. It was not error to refuse to permit the

explanation of the undisclosed design to which defendants would have testified. There was no offer of proof on this.

 Harris, Sr., testified as to a development with which he was connected in Palm Springs in 1947 or 1948, which was adjacent to the city limits, and that he had developed Arrowhead Manor Country Club. Several exhibits were produced by the defense to show how these areas were enhanced in appearance and value by the developments. There was cross-examination which brought out testimony indicating that, in these ventures likewise, alluring prospects had been held out to purchasers. Harris, Sr., admitted certain literature was sent out, which was introduced in evidence. Harris, Jr., was cross-examined also as to his connection with the sale of lots, and made admissions which might indicate the plan at Palm Springs and Arrowhead Manor was similar to that used at Rocket Town. The objection that these admissions established that defendants were guilty of other crimes is not available. This case does not fall within the rule recently followed by this Court in the case of Abdul v. United States, 9 Cir., 254 F.2d 292. In that case, the prosecution injected an independent fraudulent transaction. Here the defense took credit for development at Palm Springs and Arrowhead Manor as proof of good faith and lack of fraudulent intent. The cross-examination was germane and was within the sound discretion of the trial court. This matter was injected into the trial by defendants, not by the prosecution.

 After the announcement of the decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, appellants filed supplemental briefs, contending that the trial court erred in refusing to require the government to produce for the inspection of defense counsel questionnaires prepared by the government and filled in by lot purchasers. Unlike the situation in the Jencks case, these questionnaires were signed by the purchasers in most cases many years after the happening of the occurrences in question and were sent out by the government as a part of the investigation and prosecution of the present case. Out of the more than twenty-five purchasers of lots who testified, appellants during the trial requested the questionnaires filled out by two of them. The first request was made on the grounds that the questionnaire had been used by the witness to refresh her recollection before testifying and that access to the particular questionnaire would "make her testimony more definite." Objections to the production of these two questionnaires were sustained on the grounds that they were work papers of the United States Attorney not subject to production by the adverse party. The issue was not raised before trial by a request for the questionnaires, nor was it developed further during trial before the court. Under these circumstances, there was no prejudice or error.

 Defendants Marshall and Lea, in a separate appeal brief, contend that the fact that various devices were charged as adjuncts to the main plan breaks the single conspiracy up into innumerable small conspiracies. But the fact that various corporations were used to accomplish this plan, the adoption and use of the name "Rocket Town" in connection with the promised developments, the use of false and misleading sales material in the campaign and the employment of oral misrepresentations by the salesmen engaged in selling lots does not militate against the charge of the indictment or the finding of the jury that there was a single unified fraudulent scheme in which all defendants joined and which the mails were used to accomplish. There was sufficient competent evidence to prove each charge of which each defendant was found guilty beyond a reasonable doubt.

 Appellant Charles W. Marshall joins in the matters above disposed of and adds others. The evidence also established the connection between this defendant and the conspiracy which the jury found to exist and certain substantive crimes set up in the indictment.

■ The testimony of the witness Doig and maps introduced during his testimony were competent and proper. This all related to the unfeasibility of the supposed transcontinental highway and its supposed construction and proximity to Rocket Town.

■ Objection has been made that the trial judge held court at various places during the view trip conducted through the area. There is no requirement that court be conducted only in a courthouse. No prejudice has been shown. There was no error.

■ Defendant Lea raises these questions and some others. There was evidence which connected him personally with certain misrepresentations made to prosecution witnesses. His appeal is without merit.

■ The whole charge given to the jury by the court fully and fairly covered the case and gave proper place to the contentions of defendants. Defendants contend certain specific charges should have been given. These have been examined and compared with the charge as a whole. There was no error.

Affirmed.

## On Petition for Rehearing.

### PER CURIAM.

An able petition for rehearing has been filed which insists that our opinion too narrowly applies the rule of the Jencks case, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed. 2d 1103. Any such intention is disavowed. However, at the trial defendants made no great point of the request for these statements in the only two instances where it was denied. There had been fourteen investor witnesses upon the the stand before any such attempt was made to see answers to any questionnaire. The point made at the trial may well have been that defendants were claiming the government influenced the investor witnesses by the form of letter and the questionnaire. In any event, one of these transmittal letters and the blank form of the questionnaire were read to the jury by the defense.

Defendants did not specify these rulings as error on this appeal, and only raised the point by a supplemental brief after the announcement of Jencks.

This last circumstance is no reason for denying relief if the rights of a defendant have been violated. But this Court should not frustrate justice to satisfy a formalistic pattern. All these matters are relative. Denial of the right of cross-examination is error. Yet limitation of cross-examination is within the sound discretion of the trial court. These principles shade into one another. However, if the trial court had ruled in the face of Jencks, a different situation might be presented.

■ It is not believed that Jencks requires conformity to a ritualistic taboo. The mere fact that a statement concerning an immaterial matter is not furnished to permit cross-examination of a minor witness is not ground for reversal in any and all events, as defendants seem to believe. Not that such is exactly the situation in the case at bar. It is probable, if the trial court were faced with the same question now, production would be compelled even if the rule of Jencks did not so require.

If we were to go to the full extent of the position of defendants and hold the ruling was plain error, still a reversal would not be justified in our opinion. For, if all the investor witnesses had been excluded, there was overwhelming evidence not only to justify conviction, but almost to compel a finding of guilt.

The petition for rehearing is denied.