**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold M. DIAMOND, Bernard Sacks,
Sam Sacks and Mac Kinsbruner,
Defendants-Appellants.**

**No. 27602.**

United States Court of Appeals,
Fifth Circuit.

July 29, 1970.

E. David Rosen, Miami, Fla., for Kinsbruner, Bernard Sacks, and Sam Sacks.

Richard M. Gale, Miami, Fla., James J. Hogan, Sam Sacks, Alan E. Weinstein, Miami Beach, Fla., for Harold M. Diamond.

Robert W. Rust, U. S. Atty., Theodore Klein, William A. Daniel, Jr., Asst. U. S. Attys., Michael J. Osman, Acting U. S. Atty., Miami, Fla., for appellee.

Before PHILLIPS *, BELL and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The Grand Jury for the District of Arizona returned a sixteen count indictment originally charging the four appellants and two others with mail fraud in violation of Title 18, U.S.C., Section 1341.[1] The indictment was dismissed as to one of the other two defendants, an attorney, prior to trial and judgment of acquittal was entered as to the other, Sol Markowitz, during trial. On the motion of the United States Count V was dismissed during trial on the basis of admitted failure of proof. Jury trial of each of the present appellants, Harold Diamond, Bernard Sacks, Sam Sacks and Mac Kinsbruner, resulted in each of them being convicted and sen-

---

\* Of the Tenth Circuit, sitting by designation.

1. The cause was removed to the court below, the United States District Court for the Southern District of Florida, under Rule 21(b), Federal Rules of Criminal Procedure.

tenced as to each of the remaining fifteen counts.[2] Upon this resulting appeal we reverse and remand because of prejudicial error occurring during the trial.

The appellants were officers and stockholders in Realsite, Inc., which was engaged in the development and sale of land located in Mohave County, Arizona, marketed as "Arizona Ranchettes". The original defendant Markowitz was Chairman of the Board of Realsite; Diamond and Sam Sacks were President and Vice President, respectively. As such executive officers these two defendants were the more active participants in the alleged mail fraud scheme. Promotion for the development was handled primarily by a Florida subsidiary of Realsite, Inc., Dynamic Enterprises, Inc. Diamond was President and Sam Sacks was Vice President of Dynamic Enterprises.

In late 1961 Dynamic Enterprises entered into contracts to purchase about 8000 acres of Mohave County, Arizona land. Nine square miles of the acreage was subdivided into nine units called "Arizona Ranchettes". Dynamic Enterprises paid $110,000.00 for the release of approximately 1000 acres of this land so as to make it available for public sale. The lots sold were approximately one acre in size, and 943 lots were sold to the public. Purchasers received deeds after full payment for 342 lots, and defaults occurred in the deferred payments for 601 lots. The selling agent for "Arizona Ranchettes" was Arizona-Florida Land and Title Company, whose officers included Bernard Sacks and Mac Kinsbruner. Since the sufficiency of the evidence is not one of the questions raised on this appeal and because our disposition of the case requires that it be retried, we will not set forth the proof relied on by the government in detail. However, the main thrust of the gov-

ernment's case was that the four defendants acting through the corporations, Realsite, Dynamic Enterprises and Arizona-Florida, induced the public to purchase "Arizona Ranchettes" beginning in January 1962 by placing misleading ads in various newspaper publications, inviting the public to purchase a full acre in "Arizona Ranchettes" for $395.00. This could be accomplished by sending the coupon from the ad with a down payment, plus subsequent $10.00 monthly payments provided the applicant was fully satisfied. The coupons were forwarded from Kingman, Arizona, to Fort Lauderdale, Florida, from where color brochures (containing maps, letters, fact sheets and a report of the Arizona Real Estate Department on the subdivision) were mailed to the persons replying to the advertisement. The contents of the various promotional publications mailed to prospective customers was the basis of the indictment charges of a scheme to defraud by use of the mails.

The literature represented that utilities, including metered water, gas, electricity and telephone, would be available to lot purchasers, that the lots were fully developed and ready for early occupancy and that others had already built homes on the property and were completely satisfied. The government sought to prove that the nearest existing electricity, telephone and water lines were fourteen miles removed from the nearest "Arizona Ranchette", that the lots were in fact not ready for immediate occupancy, and that no one had built on the development.

The appellants urge: (1) that they were effectively deprived of jury consideration of their defense of good faith because of the trial court's erroneous view of the law as to good faith expressed in the jury's presence; (2) that

2. Appellants Harold Diamond and Sam Sacks received 15 one year and one day concurrent sentences. The sentences were suspended and the appellants were placed on probation for five years as to each count. Diamond and Sam Sacks were ordered to pay a $500 fine as to each count or a total of $7,500. Appellant Bernard Sacks was required to pay a $100 fine as to each count or a total of $1500. Appellant Mac Kinsbruner was fined $50 as to each count for a total of $750.

certain evidence was improperly excluded by the trial judge; (3) that the requested instruction upon the right to rely on the advice of counsel was improperly refused; and (4) that the court's instructions to the jury, particularly additional instructions given during the course of the jury's deliberations, were prejudicially erroneous. Our reversal is based on grounds (2) and (4). Other questions raised are either such as are not likely to arise upon retrial, or else contain so little substance that discussion of them is unnecessary.

## I.

### *Good Faith as a Defense*

The appellants assert that they were prejudiced by the trial court's comments in open court about the defense of good faith. The trial court stated that honest belief that an enterprise would succeed does not make out the defense of good faith and repeated that view several times during the disputed colloquy.[3] The appellants urge that these comments for all practical purposes foreclosed their right to assert good faith as a defense. We disagree.

▉▉ The trial court was correct in stating that an honest belief in the ultimate success of the project is not in itself a defense. This is clearly the holding of this Circuit. Greenhill v. United States, 5 Cir. 1962, 298 F.2d 405; Proffer v. United States, 5 Cir. 1961, 288 F.2d 182.

▉▉ The appellants rely heavily on language found in Sparrow v. United States, 10 Cir. 1968, 402 F.2d 826, 828, to support their position that honest belief in the ultimate success of the project constitutes a defense:

"In considering the issues raised by the defendant on this appeal it is necessary to consider what the term 'good faith' as used by the parties and in the previous decisions refers to, or to determine in what the defendant must have this 'good faith'. An examination of the cases previously decided by this court demonstrates that the basic reference in the opinions is to the defendant's good faith that the entire plan or scheme which has been devised and which is the subject of the promotion is economically sound. The references are not to the defendant's good faith as to the existence of any particular fact or situation; instead, as indicated above, it is good faith that the entire plan will be successful as a business."

3. "THE COURT: Consequently these changes don't affect the purchasers who purchased their property previously.
 MR. HOGAN: Only as far as those counts, your Honor, as to show the good faith of the defendant.
 THE COURT: *Very well. Well, of course, the courts have held, you know, that honest belief that the enterprise would succeeed is not a defense.*
 MR. HOGAN: Is not a what? Is not a what?
 THE COURT: Is not a defense.
 MR. HOGAN: Yes, Your Honor.
 THE COURT: Honest belief of a defendant that the enterprise would succeed is not a defense.
 MR. HOGAN: Yes, that is—
 THE COURT: Is *it your contention* that it negatives intent to defraud?
 MR. HOGAN: I'm sorry. It is my contention, Your Honor, that under Sparrow versus the United States if my client had an honest belief that this

venture at the beginning was economically sound, that that is good faith, and it is an absolute defense to this case.
 THE COURT: Well, that is not what the courts hold.
 MR. HOGAN: I submit that—
 THE COURT: Now, of course, *honest belief might negative intent to defraud; but hontest belief as such is not a defense.*
 MR. HOGAN: It is a defense.
 THE COURT: It *is not a defense.* In other words, if there is a misrepresentation but there is an honest belief that later on the misrepresentation will be made good, that is not a defense.
 MR. HOGAN: I submit that it is, your Honor.
 THE COURT: *Very well. That would be my ruling.* I thought I ought to apprise counsel.
 MR. HOGAN: Thank you, your Honor." (Emphasis added)

Even if authority from our respected sister Circuit were binding rather than persuasive, close reading of the *Sparrow* case reveals a rule of law no different than that prevailing in this Circuit. The appellants have omitted from their brief a qualifying paragraph which brings the broad language quoted above into proper perspective. The *Sparrow* court further stated at page 828 of 402 F.2d:

"A similar statement appears in Hawley v. United States, 133 F.2d 966 (10th Cir.), where the court approved a trial court's instruction which directly covered the matter of good faith in the plan as a whole. *The court there cautioned, as we do here, that no matter how firmly the defendant may believe in the plan, his belief will not justify baseless, false, or reckless representations or promises.* Elbel v. United States, 364 F.2d 127 (10th Cir.)." (Emphasis added)

No prejudicial results to the appellants flowed from the remarks of the trial court set out in Footnote, 3, supra.

## II.

### *Exclusion of Evidence*

The appellants complain that the trial court made erroneously restrictive evidentiary rulings in three respects: (1) the exclusion from the evidence of questionnaires filled out by purchasers of the land; (2) the refusal to permit proof of a prior successful land promotion enterprise conducted by the same principals; and (3) the exclusion from evidence of a certified file from the State of Arizona Real Estate Department.

■■ The appellants were entitled to rely upon good faith as a complete defense and were entitled to appropriate instructions as to such defense if the evidence warrants. Greenhill v. United States, 5 Cir. 1962, supra; Proffer v. United States, 5 Cir. 1961, supra; Coleman v. United States, 5 Cir. 1948, 167 F.2d 837; Beck v. United States, 10 Cir. 1962, 305 F.2d 595, cert. denied 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123. In

mail fraud cases often the only available defense is that of good faith. In the typical case, the accused is not in position usually to refute that the representations made were false. The accused can then only defend on the ground that the representations were made in good faith and without intent to defraud. Courts have come to recognize that in our high pressure economy, puffing of merchandise and services to the legal limit is commonplace. Consequently a person accused of fraudulent representations to prospective customers must not be unduly restricted in asserting what may be his sole defense, good faith. Intent to defraud is a jury question and a liberal policy as to the admission of evidence tending to prove good or bad faith should be followed. The court must entrust to the jury the task of sifting the evidence and the ability to reach a reasonable conclusion upon the question of intent to defraud. Against the background of these precepts we turn to the evidence which was excluded by the trial court.

The appellants first assert in this connection that the court erred in refusing to permit the introduction of questionnaires filled out by the purchasers of the land at the time they visited their property in Arizona. A witness, Lucille Thompson, an Arizona employee of Realsite, Inc., testified that these questionnaires were filled out by purchasers after inspecting their land in Arizona. Mrs. Thompson stated that the questionnaires indicated that these people were satisfied with their purchases. After completion, the forms were mailed to appellant Diamond in Florida. The trial court excluded the exhibit on the basis that the questionnaires were hearsay and irrelevant to the question of intent.

The appellants rely heavily on Reisman v. United States, 9 Cir. 1969, 409 F.2d 789. That mail fraud case states that complaint letters if personally known by a defendant are admissible to show wrongful intent. The court's theory was that proof that a defendant per-

sisted in a venture after being made aware that his advertising was being misunderstood by those to whom it was directed tends to show that the defendant intended to engage in a fraudulent scheme. The appellants suggest that if letters of complaint are admissible to show wrongful intent, letters received by the defendants from customers indicating satisfaction after visual inspection are likewise admissible to show good intent.

■ For a fraud to be completely successful it is essential that it be undetected, unnoticed and for the victim to be satisfied or perhaps more appropriately, duped. Thus complimentary letters may very well be an indication that the fraud is succeeding rather than an indicia of good intent. In view of the wide latitude accorded trial courts in the determination of relevancy of evidence we cannot say that there was an abuse of discretion in this instance. Cf. Ginsberg v. United States, 5 Cir. 1958, 257 F.2d 950; Johnson v. United States, 5 Cir. 1953, 207 F.2d 314, cert. denied 347 U.S. 938, 74 S.Ct. 632, 98 L.Ed. 1087.

The appellants urge that the trial court hampered their presentation of a good faith defense by forbidding an inquiry into a prior successful enterprise where raw acreage in Florida was developed and sold by them. They rely on a similar mail fraud case, Harris v. United States, 9 Cir. 1958, 261 F.2d 792, 797, for the proposition that proof of prior similar ventures is admissible to help establish a defense of good faith. In *Harris*; the appellate court was asked to determine whether the trial court abused its discretion in permitting as germane and proper cross-examination about such prior ventures when the defendants had introduced evidence of and taken credit for such development as tending to show good faith. The point there was that the matter had been injected into the case by the defendants. *Harris* is not in point here, where the question is abuse of discretion in the exclusion of evidence.

■ Essentially we are again faced with questions of remoteness and of relevancy. We do not discern abuse of discretion by the trial judge in the exclusion of evidence of the prior venture, remote as it was in place and circumstance.

Before we discuss the remaining evidentiary issue, a caveat is appropriate. By determining that the trial court did not abuse its discretion in excluding the questionnaires and testimony as to the prior Florida land developments we do not reach a holding that on subsequent trial after remand such evidence should necessarily again be excluded. The admissibility of such evidence will then again be a question addressed to the sound discretion of the trial court, in the posture of the case and the condition of the evidence present. We simply hold that under the circumstances shown by this record prejudicial error is not demonstrated in this regard.

■ The appellants forcefully argue that the trial judge erred in excluding from the evidence a certified file, or relevant parts thereof, from the State of Arizona Real Estate Department. The file was sought to be introduced as bearing relevantly upon the defense of good faith. It was an authoritative indication that Arizona had given permission to the appellants to sell the advertised land.

The record discloses that the Arizona Real Estate Public Land Disclosure Act requires that any lands divided into four or more parcels must be registered with the Arizona Department of Real Estate and that approval must be obtained from that Department before any part of the land may lawfully be offered for public sale. The file if admitted would have demonstrated that the appellants through Dynamic Enterprises, Inc., had requested and received permission to sell the land. The trial court excluded the evidence on the basis that a characterization of the advertising as non-fraudulent by a state agency would tend to preclude consideration of the issue by the jury.

It is clear from the record that the appellants' counsel were not relying upon this file to prove the non-fraudulent nature of the advertising. Rather, counsel urged that the file should be admitted as probative of the defense of good faith. We think that a showing of initial compliance with state real estate law was evidence entitled to be considered by the jury as tending to show that the appellants were not knowingly engaged in a fraudulent scheme. Arguably at the least fraudulent land salesmen would not be particularly conscientious in attempting to satisfy legal preliminaries. The Arizona Department of Real Estate file or relevant portions thereof should have been admitted. Its exclusion was error.

### III.

#### Advice of Counsel

The appellants contend that the trial court erred in denying the request of appellant Diamond for an instruction as to reliance on advice of counsel as an element of good faith. The trial court in refusing to give the requested instruction stated that in his view there was no evidence to support it.

The evidence shows that Mr. Zinn,[4] an attorney, approved certain advertising to be used in New York. Such advertising contained the statements "Livable Now", "High and Level", "Usable Now for Living Sites", but because of the restrictions placed on the advertising by the state of New York no reference was made to the availability of utilities.[5] The appellants urge that the evidence that Mr. Zinn approved proposed advertisements was sufficient to warrant granting the request for an instruction as to reliance upon advice of

counsel. The request was framed as follows:

"2. Reliance upon the advice of counsel is a fact and circumstance to be considered by the jury in determining whether the defendants acted in good faith. Williamson v. United States, 207 U.S. 425, 453, 28 S.Ct. 163, 173, 52 L.Ed. 278, 1908; Bisno v. United States, 388 Fed.2d 616 5th Cir. 1968." (sic)

 The point is close but we are inclined to believe that the evidence sufficed to warrant an instruction in proper form as to reliance upon advice of counsel as a defense. But even so, the trial judge did not err in denying the instruction in the form requested. It was grossly insufficient. The Ninth Circuit in Bisno v. United States, 9 Cir. 1961,[6] 299 F.2d 711 dealt with a similar request which read:

"The reliance by a bankrupt upon the advice of an attorney or an accountant is to be considered by you as an element in defendant's defense."

In passing upon the propriety of the refusal to charge in these terms the *Bisno* court observed at page 720 of 299 F.2d:

"Even if the facts in this case justified the giving of an instruction on advice of counsel, the requested instruction is completely inadequate. In the requested instruction the jury is not advised that it should consider advice of counsel as a circumstance negating fraudulent intent only upon the showing that Bisno made a full disclosure of all relevant and material facts to his attorney, nor is the jury cautioned that such defense is raised only if counsel had advised Bisno that, as a matter of law, he was not

4. Named originally as a defendant by the indictment, but dismissed before trial.

5. A field representative from New York compared the claims made in the advertisements with the actual land and recommended approval if reference to availability of utilities was deleted. Thereafter the appellants used two ad-

vertisement brochures, one for New York and another for the rest of the country. The trial judge admitted this evidence solely because the government did not raise an objection, stating that he felt the evidence was inadmissible.

6. Incorrectly cited in the requested charge as being a Fifth Circuit decision.

required to include in his schedules the specific items which the jury found had been concealed. Under the general instruction given by the district court on specific intent, the jury was entitled to consider the testimony of Bisno's counsel for what it was worth and not more. We find no error in the refusal to give the requested instruction."

See also *Bursten v. United States,* 5 Cir. 1968, 395 F.2d 976, 987 (concurring opinion). Cf. *Shale v. United States,* 5 Cir. 1968, 388 F.2d 616.

The incompleteness of the requested instruction required that it be refused by the court below irrespective of its applicability. Error is not made to appear in this regard.

## IV.

### *Jury Instructions*

█ Before giving attention to the claimed harmful effect of the trial judge's supplemental jury instructions, we touch briefly upon appellants' claim that they were prejudiced by a biased summation of the evidence in the court's general charge. As part of his charge to the jury, the trial judge undertook to summarize the evidence as is permissible and often done in federal courts, particularly by the older generation of judges, of which this particular trial judge was for so long an outstanding example. The appellants assert that the summary was prejudicial in that it was too favorable to the government and tended to gloss over without proper emphasis the appellants' defense of good faith.

The Supreme Court in *Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), delineated the guidelines to be observed:

"This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling'. This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided'."

Cf. *United States v. Lanham,* 5 Cir. 1969, 416 F.2d 1140; *Travelers Ins. Co. v. Ryan,* 5 Cir. 1969, 416 F.2d 362, and cases cited therein.

█ The court summarized the charges in the indictment and very briefly highlighted what both the government and the appellants sought to prove by the evidence. The court did not discuss any of the evidence in detail. Although both the government and appellants would perhaps have preferred some difference in emphasis, a careful reading of the court's recapitulation of the evidence does not leave us with the view that it was one-sided, misleading, unwarranted under the evidence or otherwise an abuse of discretion. Coupled as it was with careful and repeated admonitions as to the jury being the sole trier of fact, we find the charge unobjectionable in this respect.

We now proceed to consider the very serious contentions of the appellants that the trial judge committed prejudicial error in the giving of supplemental instructions during the course of the jury's deliberations. The jury initially retired at 10:58 A.M., Thursday, February 27, 1969. Less than thirty minutes later, at 11:22 A.M., the jury foreman sent a note containing a number

of questions to the judge. The jury was brought into the courtroom and the judge replied to the questions orally. One question was "When are we allowed to go home?" to which the judge answered, "Well I hope you will reach a verdict long before that time comes. It will all depend on the circumstances. You may be requested to stay through the evening". At the end of the court day the jurors indicated that they were not about to reach a verdict. Before excusing the jury for the night the court stated:

"I am going to ask you to come back, to be back by ten o'clock tomorrow morning in the jury room, * * * and I think perhaps after you have a little rest, you must be fatigued by this time no doubt, and have a night's sleep, that you will have a fair start, *and I hope that you can reach a verdict very promptly tomorrow morning.*" (Emphasis supplied)

The following morning, after half an hour's deliberation, the jury, through its foreman, sent to the judge another note comprising four questions. To the first question, which read "Question No. 1. Does the buyer beware law apply to this case?", the trial judge replies:

"There is no such law. Maybe some of you have read about it in some novel or other.

"Now, I want to impress upon you that the only law that applies to this case are the principles of law that I summarized in my instructions to you. Just confine yourselves to that, and also confine yourselves to the issues that you have to determine.

"The issues are, first, were certain representations made, were they false, and then were they made with an intent to defraud. That's all."

After complying with the second question, which asked for a re-definition of reasonable doubt, the court dealt with the remaining two in the following language:

"Now, the third question: 'Would you go over what "full disclosure" means.'

"I haven't gone over that before. That is not in this case.

"The charges against the defendants are not that there was no full disclosure, but that they made certain statements that were false and made them with the intent to defraud.

" 'Four: How much burden is on the seller?'

"Well, the burden on the seller is not to make false statements knowingly with intent to defraud.

"Now, this finishes your questions. Let me repeat again that you must concentrate entirely on the questions you have to determine, and don't go outside of them or beyond them.

"The questions are, as to each defendant separately, whether representations were made as to facts; whether those representations were false; whether they were made with intent to defraud; and whether the particular defendant participated in making the representations in one way or another and had an intent to defraud.

"Now, just confine yourselves to that and concentrate on that, and everything else is extraneous, as I told you in my remarks yesterday.

"Now, I hope you can reach a verdict promptly, and I think you can if you confine yourselves to the questions that you have to decide.

"Today is Friday, as we all know. I should hate to impose the burden on you of asking you to come back tomorrow morning—tomorrow on Saturday.

"I hope you will reach a verdict with reasonable promptness, and I think you can do it if you just confine yourselves to the questions and not speculate on outside matters concerning which I did not instruct you and which are not in this case.

"Now, is there anything else in which I can be of help to you? If

not, you may retire again to the jury room to continue your deliberations."

The jury retired to consider its verdict at 10:36 A.M. and returned, after a lunch break of approximately one hour, at 2:32 P.M. with guilty verdicts as to all defendants on all counts under consideration.

We find that the supplemental instructions were so deficient as to constitute error requiring reversal. Particularly objectionable is the quoted portion beginning "The questions are, as to each defendant separately, * * *". The summarization of issues contains no reference whatever to the only real defense offered, that of good faith. The judge was not asked to summarize the issues; he did so gratuitously and erroneously. The cumulative effect of the several instructions given was to hurry and coerce the jury into a verdict without adequate consideration of the appellants' defense of good faith. See Bland v. United States, 5 Cir. 1962, 299 F.2d 105.

As to each appellant and each count, the judgments of conviction are reversed and the case is remanded for a new trial.