**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frederick Newell BOSWELL, David Rule Nichols and Emmett Howard Herndon, Defendants-Appellants.**

**No. 76–1843.**

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1978.

Rehearing and Rehearing En Banc
Denied Feb. 15, 1978.

---

Edward T. M. Garland, Mark Kadish, Frank Joseph Petrella, Atlanta, Ga., for Boswell.

O. Jackson Cook, Atlanta, Ga., for Nichols.

L. Breland Hilburn, Jackson, Miss., for Herndon.

Robert E. Hauberg, U. S. Atty., James B. Tucker, Asst. U. S. Atty., Jackson, Miss., for plaintiff-appellee.

Before COLEMAN, SIMPSON and TJOFLAT, Circuit Judges.

COLEMAN, Circuit Judge.

The actors in the course of conduct which resulted in the convictions hereinafter described were Frederick Newell Boswell, Emmett Howard Herndon, David Rule Nichols, and Robert Doran.

During 1973, Boswell had been operating a company in North Carolina called Pinehurst Mortgage and Loan Company. Pinehurst solicited investments from the public and used the funds so derived to acquire real estate and mortgage holdings. The money deposited was represented by promissory notes to be repaid at a certain time with interest. Deciding to expand his operations, Boswell enlisted the assistance of Herndon and Doran. Herndon had previously helped Boswell set up Pinehurst, but Doran was inexperienced in the mortgage and loan business. Mississippi and Louisiana were chosen for expansion, primarily because of the exemption of promissory notes from state securities regulations. Doran was to work in Mississippi and Herndon in Louisiana.

Doran came to Mississippi and, with Herndon's help started Jackson Mortgage. Nichols, office manager of Pinehurst, gave Doran false credit references and other advice to help him get started. After the necessary incorporation was completed and an advertising format worked out, Boswell came to Mississippi to inspect what had been accomplished. Liking what he saw, Boswell had $5,000 wired from a Pinehurst account to Doran for expenses. Boswell had decided it would take $15,000 to get the company started, with the funds to come from Pinehurst. Nichols constantly checked on Doran and traveled to Jackson to determine how he was doing his job.

The advertising campaign was kicked off with ads in newspapers across the state, promising high interest returns for money placed with Jackson Mortgage. Inquiries began coming in from the public. A solici-

tation letter,[1] drafted by Boswell, was mailed in response to those inquiries. The solicitations were confined to Mississippi so that Jackson Mortgage would not violate federal securities laws. The letter described the company, what the investor's money would be used for, and the expected rate of return on the various investments. This letter had several false statements, such as claiming Jackson Mortgage had provided short-term capital for sound real property investment, claiming Jackson Mortgage had made mortgage loans on real estate, claiming the directors had more than forty years experience, and implying that Jackson Mortgage had certified public accountants.

The money started coming in, but none was invested in real estate and mortgage

1. **Jackson Mortgage and Loan Inc.**

– 44 –

1755 LELIA DRIVE JACKSON, MISSISSIPPI 39216 / TELEPHONE 981-1745

Date

Name
Street
City

Dear

Jackson Mortgage and Loan is a Mississippi financial institution which provides short-term capital for sound commercial, industrial and residential properties. Though not federally insured funds invested in Jackson Mortgage and Loan have a high safety factor because the bulk of the collateral for mortgage loans is Prime Real Estate. All the directors of Jackson Mortgage and Loan are or have been active in the field of Real Estate and bring a total of more than 40 years' experience in the financing and development of Real Estate.

The new series of Jackson Mortgage and Loan investment notes earn 9.5% interest compounded daily, which is an actual income rate of 9.96% per annum. The 1974 series of investment notes are issued in $50.00 units and are redeemable after 12 months. For example, after 12 months' maturity a $500.00 note earns $49.80; a $1000.00 note earns $99.60; a $5000.00 note earns $498.00. Thirty (30) days prior to the maturity of the 12 month investment notes, investors will be notified by mail to inform them, that their investment notes are due to mature, at which time the principal and the interest will be sent to the investor. We would hope at that time the investor would choose to invest further with Jackson Mortgage and Loan, Inc. It is the opinion of Jackson Mortgage and Loan's certified public accountants that there will be no income tax liability until the note matures and pays interest even though the interest is compounded daily. Thus, the 1974 series of notes will not mature until 1975 and tax will not be due until 1976.

Jackson Mortgage and Loan's Demand Investment Notes earn 8.5% compounded daily. Minimum investment is $50.00. There is a fifteen (15) day waiting period on redemption of demand notes if redeemed prior to date of maturity.

The mailing address of Jackson Mortgage and Loan is:
1755 Lelia Drive
Suite 402
Jackson, Mississippi 39216

Please drop by or call if we may be of further help.

Sincerely yours,

RED/sp

Enclosures

Robert E. Doran
President

loans. The promoters began draining the money off for payment of their salaries and other purposes. The Secretary of State stepped in, closed down Jackson Mortgage, and put it into receivership.

This culminated in Boswell, Herndon, and Nichols being indicted by the United States grand jury on one count of mail fraud and one count of conspiracy to commit both mail fraud and fraud by wire, 18 U.S.C. § 371 and § 1341 (1970). Boswell was also indicted on one count of fraud by wire, 18 U.S.C. § 1343 (1970). Doran was not indicted and became the crucial witness for the government.

The trial jury convicted all defendants on all counts. Nichols was sentenced to five years in prison, with four years probation after his release. Boswell and Herndon were sentenced to eighteen months, with three years of inactive probation subsequent to release. A condition of Boswell's probation was that he make full restitution to all who had deposited funds in Jackson Mortgage.

Appropriate motions for judgments of acquittal were denied. The appellants argue that this action was erroneous because the evidence did not support the allegations of the indictment. On the statements of facts hereinabove appearing, these contentions are bereft of merit, see *United States v. Kohlmann*, 5 Cir., 1974, 491 F.2d 1250, 1253; *Stephens v. United States*, 5 Cir., 1965, 354 F.2d 999.

█ The next assignment of error is grounded upon a rarely encountered occurrence. After the close of the evidence, the trial at that point having lasted five days, the trial judge became ill. He inquired of all trial counsel if there were any objections to allowing the magistrate to sit during the scheduled four hours of argument to the jury, so as to avoid delaying the trial. The defendants were not informed by the Court of their right under the Rule to have a judge preside over the argument and, of course, they did not personally say that they would waive that right. The attorneys, however, stated that there was no objection. The magistrate introduced himself to the jury and explained the reason for

his presiding in the absence of the judge. The defense offered no objection at that point or at any other time until after the guilty verdicts were returned. At the close of argument the judge was able to take the bench and to instruct the jury, thereafter presiding for the remainder of the trial.

The defendants correctly argue that the substitution of the magistrate did not comply with the mandate of Rule 25(a) of the Federal Rules of Criminal Procedure:

"If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial may proceed with and finish the trial."

The defendants say, and it is no doubt so, that the magistrate was neither a "judge regularly sitting in or assigned to the court" nor familiar with the record of the trial.

The defendants seek to expand this into a constitutional issue: that the Sixth Amendment right to trial by jury includes the right to have a statutorily competent judicial officer try the case, relying on *Capital Traction Company v. Hof*, 174 U.S. 1, 13, 14, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899):

" 'Trial by jury,' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, *in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts*, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there

has been little occasion for its distinct assertion. Yet there are unequivocal statements of it to be found in the books." (Emphasis added).

The argument further contends that the waiver by counsel was insufficient because only "express and intelligent consent of the defendant" can constitute a waiver of a constitutional right, *Patton v. United States*, 281 U.S. 276, 312, 313, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

There was only a handful of objections raised during oral argument. Chiefly, those objections were to the effect that the prosecutor was misquoting testimony. In response to this, the magistrate informed the jury that he had not heard the evidence and was not in position to pass on the accuracy or inaccuracy of the prosecutor's assertions. The jurors were informed that they had heard the testimony and that they were the judges of whether or not it had been accurately quoted. Without deciding whether the occurrence was an invasion of a constitutionally guaranteed right, and without deciding whether the defendants were required in the circumstances to *personally* enter an intelligent waiver, our evaluation of the record is that they could not have been prejudiced by what took place. Viewed in the context of five days of testimony, these disputes as to what a particular witness had said, or not said, could not have misled the jury because the jurors had heard the testimony and had the benefit of their own recollections on that subject.

*Haith v. United States*, 3 Cir., 1965, 342 F.2d 158, was a case in which the presence of a trial judge during the selection of the jury had been "impliedly waived" by defense attorneys. Nothing prejudicial to the substantial rights of the defendants was shown. The Court refused to set aside the conviction.

We find nothing prejudicial in the situation now under consideration. We do not intend to leave the impression that we look with approval upon a failure to conform to Rule 25(a). Our decision applies to this case

only, and to what actually happened here. We must hold that beyond a reasonable doubt lack of conformity in this instance was harmless error.

### The Dispute Concerning Restitution

The sentence unconditionally imposed on Boswell as to Count 1 was he should serve eighteen months in the custody of the Attorney General. As to Count 2, imposition of sentence was suspended and Boswell was placed on inactive probation for a period of three years after release from confinement on the sentence imposed on Count 1. As to Count 3, imposition of sentence was also suspended and the defendant was placed on inactive probation for three years after release from confinement on Count 1, to run concurrently with the probation imposed on Count 2.

As a special condition of probation on Counts 2 and 3 the Court ordered at first that Boswell should "pay within sixty days to the United States Probation Officer as Trustee to be held in trust the full amount invested with Jackson Mortgage and Loan Company, Inc., by all investors, *as determined to be due by the United States Probation Officer* (emphasis added)". Boswell moved to vacate the order because it would have the probation officer make a judicial determination he was not qualified to make and because it did not give Boswell credit for funds in the hands of the state receiver. At that point, however, it could not be known what, if anything, would be distributed to the investors. The state receivership was still in progress and the receiver had $26,910.64 in cash.

At the second hearing the parties stipulated that the loss to the investors amounted to $71,140.99. The Court then ordered Boswell to pay that sum to the probation officer within ten days of July 1, 1976, "to be held in trust until such time as there has been a final determination of this matter and which the probation officer shall hold on deposit at Unifirst Federal Savings and Loan Association at the highest current interest".

It is unmistakably clear from the record as a whole that the Court intended that if

Boswell was to receive probation on Counts 2 and 3 all the money lost by the defrauded investors was to be recovered by July 10, 1976. It, however, did not order that the money be immediately distributed to them. That might have made it difficult if not impossible for Boswell to retrieve any portion for which he was entitled to credit. The money was to be held under the control of the Court until such time "as there has been a final determination of this matter", an event to be anticipated when it became known how much, if anything, the state receiver had recovered for the depositors from the net proceeds of the receivership. While the order does not say so, the District Court obviously intended that on "final determination" Boswell would be refunded an amount equal to that recovered by the receiver.

On July 21, 1976, a panel of this Court stayed the restitution order until the outcome of this appeal.

As a condition of probation a district court undoubtedly has the authority to require that a defendant make restitution to injured parties for *actual* loss or damage caused by the offense for which he stands convicted, 18 U.S.C. § 3651 (1970); *United States v. Savage*, 5 Cir., 1971, 440 F.2d 1237, 1239; *United States v. Mancuso*, 5 Cir., 1971, 444 F.2d 691.

Since 18 U.S.C. § 3651 authorizes a requirement that a defendant make good only actual losses, and since the state receivership has been in progress for approximately sixteen months since our stay order, we are of the opinion that as to Counts 2 and 3 only, the case should be remanded to the District Court for resentencing so that the condition imposed for restitution may be expressly stated in terms of *actual loss* to the defrauded depositors. Boswell's unconditional sentence on Count 1 will be effective on receipt of our mandate.

■ The appellants also urge that the trial judge committed error when he refused to instruct the jury that good faith was a defense to each count of the indictment, as requested by Requests to Charge numbered 10, 13, and 23. In a different factual situation this point would require critical examination. See, e. g., *Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896); *Kroll v. United States*, 5 Cir., 1970, 433 F.2d 1282; *United States v. Diamond*, 5 Cir., 1970, 430 F.2d 688.

But the defendant's evidence at trial as to good faith went only to conduct in the formation and operation of Pinehurst Mortgage and Loan Company, whereas the indictment charged fraud solely with respect to the operation of Jackson Mortgage and Loan Company. Appellants only "were entitled to appropriate instructions as to such defense *if the evidence warrants* ", (emphasis added), *United States v. Diamond, supra*, 430 F.2d at 692. Such was clearly not the case here.

We feel no compulsion, therefore, to determine whether the requested charges correctly framed what was simply in the circumstances an abstract legal proposition.

Boswell's conviction on Count 1 is AFFIRMED.

Boswell's convictions on Counts 2 and 3 are AFFIRMED and REMANDED for further proceedings not inconsistent herewith.

The convictions of Emmett Howard Herndon and David Rule Nichols are AFFIRMED.

TJOFLAT, Circuit Judge (concurring specially):

Although I agree with the majority's result, I feel that the analysis in this case requires clarification. By implication the majority, despite its disclaimer that it has not decided the constitutional issue, has determined that the right to the presence of the trial judge during closing argument in this case was not fundamental to a fair trial. This determination is necessarily subsumed in the majority's analysis because if the right were fundamental to a fair trial here, then any error, no matter how negligible, would require reversal of Boswell's conviction. As stated in *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967), "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." I agree with the majori-

ty's implied finding that substitution of the magistrate during closing argument did not so infringe Boswell's substantial rights as to require an outright reversal as a matter of law.

I would go beyond the majority's determination that the trial judge's absence in this case was not prejudicial and hold that it was harmless beyond a reasonable doubt. It is my understanding that *Chapman* and its progeny require this stringent standard, rather than the more lenient lack-of-prejudice standard used by the majority, when constitutional error has occurred in a trial. My determination that the error here was harmless beyond a reasonable doubt obviates the necessity of reaching the issue whether the requirement of the trial judge's presence during final argument to the jury is a right of constitutional dimension.