Jeff T. HENSLEY and Valarea D. Hensley, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16827.

United States Court of Appeals Fifth Circuit.

June 30, 1958.

Petitions for Rehearing Denied Aug. 18, 1958.

Paul Webb, Jr., L. E. McNatt, Atlanta, Ga., for appellants.

James W. Dorsey, U. S. Atty., Atlanta, Ga., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Appellants' complaints are that the district court revoked probation and sentenced each of them to two years' imprisonment. On December 5, 1952, the court accepted nolo contendere pleas from Jeff T. Hensley in two cases charging income

tax evasion and a like plea from Valarea D. Hensley in one case charging that offense. The fines imposed upon them have been paid. In addition, each judgment of conviction provided in substance:

"* * * that the imposition of any imprisonment sentence is suspended until the further order of the Court and that he (or she) be placed upon probation for the period of Two (2) Years, and that during the period of probation he (or she) shall demean himself (or herself) correctly, as a law abiding citzen in every respect, and shall report to a Probation Officer of this Court at such times and in such manner as the Probation Officer shall direct, and that a condition of this probation be that the defendant shall cooperate with the Collector of Internal Revenue in determining the amount of tax due and that he (or she) shall pay the same."

After their fines had been paid, the defendants were permitted to return to their home in Metter, Candler County, Georgia, within the Southern District of Georgia, and the duty of supervising them was transferred to the probation office of that district.[1] The taxes remained unpaid. After civil proceedings, including a complaint to set aside a transfer of their properties to defraud the United States of its taxes, had failed to result in collection, motions were filed to revoke their probatior

The court extended the periods of their probation until November 9, 1956 in order to give time for a hearing of the motions to revoke. On June 12, 13, and 14, 1956, the court conducted a full hearing on said motions.

The ground of the original motions to revoke probation was that "subsequent to December 5, 1952, and during the period of probation, defendant has been guilty of violating the conditions of probation by not cooperating with the Collector of Internal Revenue in determining the amount of tax due." The motions to revoke were filed November 9, 1954. By the time of the hearing in June 1956, the defendants had cooperated in determining the amounts of the taxes due but there had been no payment. At

[1]. The evidence on that issue consisted simply of a letter dated December 11, 1952, addressed to both defendants by the Chief Probation Officer of the Southern District of Georgia, as follows:

"Dear Mr. and Mrs. Hensley:

"This is to advise that you have been transferred to my supervision as of December 5, 1952, having been placed on probation for two years in the Northern District of Georgia on this date, and you will make your future reports to me.

"We send out a monthly letter around the 26th of each month in which is enclosed a report blank which you will fill out in full on the 1st of each month and mail to me at P. O. Box 156, Savannah, Georgia, so as to reach me not before the 1st and not later than the 5th of the month.

"It will be noted that a special condition of your probation is that you, J. I. Harrison, [sic] pay a fine of $1,500.00 of each of two indictments, and that you, Valarea D. Hensley, pay a fine of $1,-000.00, which fines we note were paid on December 5, 1952, also that you cooperate with the U.S. Government in determining the amount of civil liabilities due in your case and that you pay the amount finally determined to be due.

"I enclose herewith probation advised agreement blank which you will kindly have filled out by some good upright, law-abiding citizen who will cooperate with us in your supervision. He should not be a lawyer, peace officer, relative or your employer, but a good upright, law-abiding citizen who is known as such in your community, who agrees to voluntarily cooperate with us in your supervision and will fill out the blank and sign it and have it certified at the bottom by the postmaster or some other government or state officer, showing that they know the person who signs it and knows that he is of upright, law-abiding character and will cooperate with us in your supervision.

"Assuring you of our continued interest in your welfare and with kindest regards, I remain

"Sincerely yours,
"(S.)  Edwin C. Hardison,
"(Edwin C. Hardison),
"Chief U.S. Probation Officer."

the outset of the hearing, the United States Attorney stated:

"\* \* \* The second condition of the probation, another condition rather, was that they should pay the tax certainly to the extent of their ability to do so, in good faith. I want to direct Your Honor's attention to that, because that is the essence of today's hearing."

To which the court responded: "All right." The United States Attorney continued his statement in part as follows:

"\* \* \* That is why I undertook to make this statement to the Court, because I want the Court to understand the nature of the motion, the terms of probation having been that they should in good faith, I interpolate those words because I am certain that is in it, they should in good faith pay to the extent of their ability. Our position is rather than doing that, or attempting to pay any portion of it, they have so handled their affairs that regardless of the ultimate legal outcome of any litigation, they have not in good faith attempted to pay—"

Shortly thereafter, the defendants' counsel stated:

"\* \* \* As I understand the order over there, the one that was served on me, this hearing is for the purpose of showing the taxpayer did not cooperate in determining the amount of tax due, and as Mr. Dorsey stated, we have done that very thing."

To which the court responded: "All right, there is no point on that. The question is whether you in good faith paid what you could."

There was thus no confusion on the issue. On June 13, 1956 before the hearing closed, the motions to revoke were amended "by adding the following words to the second paragraph thereof: 'and paying the same.'"

On June 14, 1956 at the close of the hearings, the court revoked the proba-tions of the defendants and made the following statement:

"The Court:

"Gentlemen, I am finding both defendants guilty in this case, and I want it understood that I have not tried in these charges the question of the alleged illegal transfer of the Kennedy Warehouse, or any claim in that. The Government has stated that they want to file a separate motion under that. And I want to make it clear for the record that that transaction is not included here. This Court gave these taxpayers every possible consideration, took a plea of nolo contendere. It has been now about four years. While I do not find that they concealed any facts, or failed to cooperate, except I do find this: I find that they have concealed properties, but not the amount of tax. I think there is a difference, there, and that is the reason that I told Mr. McNatt he should not put in any evidence to rebut the charge here that they misrepresented the amount of tax, because there is nothing to show that. But I do find there has been a gross concealment of assets, and intentional and fraudulent transfer covering up of assets to avoid the payment of this tax. And I am prepared to announce the sentence in this matter, and I will hear from defendants at this time as to what they have to say before sentence is imposed."

Thereafter, the court conducted still further hearings. On July 3, 1957, it overruled the defendant's motions to set aside the judgment revoking probation or, in the alternative, to grant them a new hearing on the Government's motion to revoke probation and their motions to dismiss the Government's motion to revoke probation. On July 12, 1957, the court sentenced each of the defendants to two years in the custody of the Attorney General. These appeals followed, pending which the defendants were admitted to bail.

■ The first contention is that the jurisdiction of the sentencing court had been transferred to the District Court for the Southern District of Georgia pursuant to the following provision of 18 U.S.C.A. § 3653:

"Whenever during the period of his probation, a probationer heretofore or hereafter placed on probation, goes from the district in which he is being supervised to another district, jurisdiction over him may be transferred, in the discretion of the court, from the court for the district from which he goes to the court for the other district, with the concurrence of the latter court. Thereupon the court for the district to which jurisdiction is transferred shall have all power with respect to the probationer that was previously possessed by the court for the district from which the transfer is made, except that the period of probation shall not be changed without the consent of the sentencing court. This process under the same conditions may be repeated whenever during the period of his probation the probationer goes from the district in which he is being supervised to another district."

There was no order of the sentencing court transferring jurisdiction to the Southern District of Georgia, and no order of that court accepting jurisdiction. There is no showing that jurisdiction was transferred, but only that the probation office for the Southern District of Georgia, instead of the like office for the Northern District, supervised the probationers. That did not result in any loss of jurisdiction by the sentencing court.

■ The real issue upon the hearing of the motions to revoke, of which we hold that the defendants had due notice, was whether the defendants had in good faith paid what they could on the taxes for the evasion of which they were convicted. There was ample evidence to sustain the finding of the district court that they had not, but instead had concealed and fraudulently transferred their assets.

■ While an appeal lies from a judgment revoking probation,[2] the issue on appeal is simply whether the trial court abused its discretion in finding that one of the conditions of probation had been violated.[3] The district court in this case has been most patient, and has not abused its discretion. Its judgments are

Affirmed.

On Petition for Rehearing.

PER CURIAM.

The following statement of fact appearing at the top of page 3 of the slip opinion is erroneous and is withdrawn:

"After civil proceedings, including a complaint to set aside a transfer of their properties to defraud the United States of its taxes, had failed to result in collection, motions were filed to revoke their probation."

The motions to revoke probation were filed before the civil proceedings, but were heard after the civil proceedings had failed to result in collection. That does not change our judgments of affirmance. The petitions for rehearing are therefore

Denied.

2. Escoe v. Zerbst, 1935, 295 U.S. 490, 494, 55 S.Ct. 818, 79 L.Ed. 1566; Bernal-Zazueta v. United States, 9 Cir., 1955, 225 F.2d 64, 68.

3. Burns v. United States, 1932, 287 U.S. 216, 222, 53 S.Ct. 154, 77 L.Ed. 266; Pritchett v. United States, 4 Cir., 1933, 67 F.2d 244, 245; Bernal-Zazueta v. United States, supra.