**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louis LANDAY, Defendant-Appellant.**

**No. 74–2640.**

United States Court of Appeals,
Fifth Circuit.

May 23, 1975.

L. Burke Lewis, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., E. Ray Taylor, Wm. P. Gaffney, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This appeal seeks to determine the limit to which the non-governmental recipient of a consent judgment entered

into as a part of a guilty plea bargain resulting in a suspended sentence under 18 U.S.C.A. § 3651 may force the judgment debtor to fulfill the conditions of that agreement. Because we find that the judgment debtor did all that was necessary to comply with the terms of his sentence, we reverse the revocation of his probation by the District Court.

The appellant, Lewis Landay, was indicted on six counts of causing the interstate transportation of forged securities, 18 U.S.C.A. § 2314, arising out of an elaborate check kiting scheme involving two banks. As a result of this scheme one of the banks, the First National of Atlanta, incurred a loss of approximately $60,000. On October 17, 1973 Landay pleaded guilty to three of these counts and the other three were dismissed. On November 9 he signed a consent judgment for $60,423.58 in favor of the First National Bank. A substantial portion of this judgment was immediately satisfied by a consent garnishment of Landay's account at another bank.[1] On November 16 he was sentenced to three concurrent terms of five years each—six months to be served in a penal institution and the remaining 54 months on probation. As a special condition of this probation Landay was to "execute immediately docu-ments necessary to transfer to the bank all assets and property he now owns."[2] In accordance with this condition, by a formal document the sufficiency of which is in no way doubted, he conveyed to the bank a security interest in his share of his father's estate[3] which was pending probate in Baltimore, Maryland.[4] On December 13 the bank attempted to get Landay to execute a power of attorney which would have had the effect of an outright assignment of this portion of the estate. Although Landay contends that this would have resulted in a windfall on behalf of the bank, the unsigned assignment is limited by its terms to a maximum of $35,584.10. (Govt. Ex. # 7.) Landay refused to execute this assignment and as a result the Government under immediate pressure from First National moved to revoke his probation. The District Court did so.

Although Landay itemizes four points of appeal in his brief, they are in essence two and we will treat them as such.

## I.

First, he attacks the probation condition because by its language it affects "all assets and property he now owns" and so is not limited to the "actu-

---

1. The amount was $24,839.48 leaving not more than $35,584.10 due the First National.

2. The formal sentence prescribed:

    the execution of the remainder of this sentence be, and the same hereby is suspended until the further order of the court, and that the defendant be placed upon probation for the period of FIFTY–FOUR (54) MONTHS with two SPECIAL CONDITIONS: 1. That he execute immediately documents necessary to transfer to the bank all assets and property he now owns. 2. That he engage in employment during his period of probation approved by the Probation Officer.

3. The agreement provided:

    As security for the repayment of the obligation, I hereby pledge, transfer, convey, assign and grant to the Bank a continuing general lien upon and security interest and title in and to all my right, title, interest and expectancy in and to the estate of my father, Irving Landay, deceased, filed for probate in the Orphans Court of Baltimore County, Maryland, on or about June 5, 1973, or un-der any other Will or intestacy laws should the said Will be successfully contested, and all proceeds thereof.

    In his letter of transmittal to the executor of the estate he provided:

    By this letter, I hereby authorize and direct you to pay to the Bank, to the extent of $35,584.10, all of the monies in your possession attributable to my interest in the estate, both now and coming into your possession in the future. This authorization and direction shall remain in force until such time as you have paid, out of my interest in the estate, the full indebtedness of $35,584.10, or until my interest in the estate is depleted, whichever first occurs.

    You are hereby authorized to execute in my name and on my behalf, any and all instruments, documents, or other papers necessary or incidental to accomplish the foregoing, as fully as if they had been executed by me personally.

4. It is uncontested that Landay's interest in the estate was sufficient to pay the remaining amount he owed to the bank.

al damages"[5] attributable to the counts of the indictment to which he pleaded guilty under the terms of the plea bargain. Although it may be true that the probation condition is not a model of specificity, this lack is not a fatal infirmity here. The rule that limits the restitution amount to the conviction counts, United States v. Taylor, 4 Cir., 1962, 305 F.2d 183, cert. denied, 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126; United States v. Mancuso, 5 Cir., 1971, 444 F.2d 691, is designed to eliminate doubt about when this amount has been repaid and so avoid the possibility of a post-sentencing disagreement that ends with the defendant back in jail.

■ The disagreement with which we are faced in this case does not involve the *amount* of restitution but rather the *method*. At the time he passed sentence the Trial Judge had before him a consent judgment in which Landay freely and voluntarily admitted the exact amount the First National claimed he owed. There is no question but that the amount of the consent judgment was the amount of restitution that the Trial Judge contemplated as the condition of probation. Neither could the parties have envisioned any other sum. There was no error in the way the sentence was imposed here.[6]

## II.

■ The real question, and Landay's second point of appeal, is whether he complied with this condition. We do not find it necessary to rely on those cases that hold that any ambiguity in a sentence is to be resolved in favor of the defendant. Gaddis v. United States, 6 Cir., 1960, 280 F.2d 334; United States v. Martin, 7 Cir., 1972, 467 F.2d 1366. The single ground for revocation of the probation was Landay's failure to execute the assignment asked for by the bank. After oral argument we asked the parties (including First National as amicus)[7] to submit supplemental briefs on the issue of First National's legal right under Maryland law to effectuate a transfer of so much of Landay's share of his father's estate as necessary to make payment of the balance of the restitution amount ($35,584.10) on the basis of those documents that he had already executed. These briefs reveal that under Maryland law First National need only file in the appropriate Maryland court a Judgment Condemnation Nisi under Md.R.P. G54, prove the claim by means of the consent judgment filed in the Georgia court, and have an absolute judgment entered in its favor. It can then proceed to attach the assets of the estate if necessary.[8] It is clear that Landay did all that was necessary to effectuate the restitution he promised.[9]

■■ In considering the revocation of probation the trial court must convince itself that the defendant has not in good faith attempted to comply with the conditions of his probation. United States

---

**5.** 18 U.S.C.A. § 3651 provides in pertinent part:

> While on probation and among the conditions thereof, the defendant—
>
> May be required to pay a fine in one or several sums; and
>
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and
>
> May be required to provide for the support of any persons, for whose support he is legally responsible.

**6.** Nevertheless I share many of my Brother Coleman's doubts about the wisdom of using restitution as a condition for a suspended sentence.

**7.** First National's counsel begged off.

**8.** The reason First National's counsel begged off (see note 7, *supra*) may have been that in August 1974, prior to the filing of the Government's brief on the merits and the argument before us in December 1974, First National through prestigious counsel in Baltimore filed such papers including certified copies of the Georgia consent judgment.

**9.** The only objection raised in the Government's brief to the above-outlined procedure is the weak one of the possibility that a Maryland court would not give full faith and credit to the consent judgment because it was entered into under duress. As the brief goes on to concede, however, a consent judgment is considered to be a contract between the parties and is binding upon them.

v. Savage, 5 Cir., 1971, 440 F.2d 1237, 1239; Hensley v. United States, 5 Cir., 1958, 257 F.2d 681, 684. In light of the attendant circumstances it is our conviction that Landay has not only acted in good faith. He kept the faith. He kept the bargain.[10] Probation could not be revoked for the stated reason.

Reversed.

DYER, Circuit Judge (dissenting):

This appeal is not about what we should do for the victim who was bilked out of $60,000, but what we should do about the thief who plea bargained a maximum 60 year sentence and $60,000 fine into a 6 months' sentence plus probation on his promise to make restitution, and now reneges.

The simple fact is that Landay has not complied with the special provision of his probation that he execute "whatever documents may be necessary" to transfer funds to make restitution, but on the contrary has refused to do so. As a consequence, the victim must file suit in Maryland to obtain judgment against the thief because he refuses to execute a limited power of attorney for the release of the funds from his father's estate. This is not acting in good faith, keeping the faith, or keeping the bargain. This is bad faith and conduct entirely inconsistent with a bona fide effort to accomplish rehabilitation. *See* Hensley v. United States, 5 Cir. 1958, 257 F.2d 681; United States v. Steiner, 7 Cir. 1957, 239 F.2d 660.

I do not share the majority's philosophical objections to requiring a thief to make restitution to his victim as a condition of probation, a condition which is, in any event, statutorily authorized. 18 U.S.C.A. § 3651. In my view the Government should be applauded rather than rebuked for having attempted to make the thief live up to his plea bar-

gain, and the district court should be affirmed for having exercised its sound discretion in revoking Landay's probation. I dissent from Part II.[1]

---

10. Reversal is on the basis that so far he has kept the bargain. Obviously, it assumes that he will continue to do so. This means that appellant may not in any way in the courts of Maryland or elsewhere resist First National in

effectuating the unqualified transfer of Landay's interest in this estate up to the amount due First National.

1. I concur in Part I of the majority opinion.