**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louie R. GRUGETTE,
Defendant-Appellant.**

**No. 81–2273.**

United States Court of Appeals,
Fifth Circuit.

June 17, 1982.
Rehearing Denied Aug. 3, 1982.

Douglas Tinker, Corpus Christi, Tex., for defendant-appellant.

Carl Walker, Jr., U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Grugette was convicted after a jury trial of violating 18 U.S.C.

§ 1001 by falsely representing in an application for a Small Business Administration ("SBA") guaranteed loan that he had authority to pledge the assets of a corporation of which he was part owner. Grugette was sentenced to five years' imprisonment, to be suspended with five years' supervised probation imposed. He was required to make restitution to the SBA in the amount of $50,000. On appeal, Grugette alleges a number of defects in the indictment, trial, and sentencing phases of the proceedings. Finding no reversible merit to Grugette's contentions, we affirm.

The basic offense charged results from the execution of a security agreement pledging the assets of Craine's Boutique, Inc. ("Boutique"), a requirement for the approval of an SBA-guaranteed loan.[1] After negotiation questioning the SBA's requirement[2] that the Boutique assets be pledged in connection with an SBA-guaranteed $200,000 loan sought for a sister corporation (Craine's Lexington Corporation d/b/a Craine's *Furniture* Co.—"Furniture"),[3] Grugette executed the pledge agreement on behalf of Craine's Boutique, Inc. Grugette, who did not hold a majority interest in Boutique and who did not call a meeting of Boutique's board of directors to authorize the pledge, nevertheless executed the instrument under circumstances that a jury could reasonably believe constituted a false representation that he had authority to do so.[4]

After Furniture defaulted on the loan, the SBA discovered that Grugette had not been authorized to pledge Boutique's assets. The SBA lost approximately $102,000 on the defaulted Furniture loan.

Grugette was charged with violating 18 U.S.C. § 1001[5] by falsely representing in an application for an SBA guaranteed loan that he had the authority to pledge all of the assets of the Boutique.[6] Grugette was found guilty after a jury trial, and sentenced to five years' imprisonment, to be suspended with five years' probation. Grugette was also required to make restitution to the SBA in the amount of $50,000, a condition of his probation and suspension of sentence.

---

1. Grugette apparently owned 25 per cent of the stock of the Boutique, and had a contract with another owner to purchase an additional 25 per cent of the stock. *See* trial transcript at 361-63. Grugette testified that he owned 50 per cent of the stock in the Boutique. *See id.* at 503.

2. After the initial application by Furniture for the loan, the SBA required the pledge of Boutique's assets also because they were physically located within the furniture store. Enforcement of a pledge against only Furniture's assets would obviously involve collection difficulties arising from the commingling and possible defenses that Boutique rather than Furniture assets were involved. In a statement of Boutique's assets admittedly personally prepared by Grugette in compliance with the SBA requirement that Boutique's assets be pledged as well as Furnitures's, Grugette valued Boutique's inventory as $120,199.53, and its fixtures as $4,434.12.

3. Grugette owned an 87% interest in this corporation, which operated Furniture. With relevance to the knowing and willful nature of his conduct in failing to do the same for Boutique's pledge, his pledge of Furniture's assets was properly authorized by corporate resolution of the board of directors of Furniture.

4. This unauthorized pledge of Boutique's assets was, of course, invalid. From the testimony of a Boutique stockholder and member of its board of directors, a reasonable inference is permissible that the non-family stockholders and directors of Boutique not only did not know of the pledge, but would not have approved it.

5. 18 U.S.C. § 1001 provides:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

6. Grugette was also indicted on two other counts of violating 18 U.S.C. § 1001. One count was dismissed before trial on the government's motion. A defense motion for judgment of acquittal was granted on the other count.

Grugette raises several issues on appeal. His claims of insufficiency of the evidence (that he "knowingly and willfully" made the false representation) and of prosecutorial misconduct (side bar remarks, an alleged misstatement, etc.) do not present reversible error on the record and under established jurisprudence of this court. We will discuss below the remaining issues, which relate to: (1) whether the conduct of making a false representation as to the Boutique pledge agreement issued in connection with the loan was included within the conduct described by the indictment that charged that the false representation occurred in an *"application"* for an SBA guaranteed loan; (2) whether Grugette's restitution condition in his suspended sentence violated his equal protection rights; and (3) whether the trial court exceeded its statutory authority to require restitution only of "actual damages or loss caused by the offense," 18 U.S.C. § 3651.

### 1. The Indictment "Application" Issue

The indictment charged that Grugette willfully and knowingly made the false representation *"in* an *application* for a business loan submitted to" the SBA (emphasis supplied). Grugette argues that the evidence was insufficient to sustain his conviction because, according to him, the only time that he pledged the Boutique assets was *after* the application was made and the loan was authorized, and hence not in the *application.*

Grugette's contention that the fraudulent pledge did not occur in his *"application"* is also the basis of three other contentions made by him: (1) that there was a fatal variance between the indictment (which charged Grugette with making a false statement only in the loan "application"), and the proof adduced at trial (which showed .that the allegedly false statement

was made after the loan was approved); (2) that the indictment (false statement in an "application") should have been quashed for vagueness, in that it did not adequately inform Grugette of the offense charged; and (3) that the trial court erred in instructing the jury that Grugette could be found to violate the relevant statute by using a false "document", when the indictment referred specifically only to an application.

■ We find no merit to Grugette's pervasive technical claim that the allegedly false statement did not occur in an "application." The meaning of the term "application" may reasonably include *any* document used in connection with the application to obtain approval of the loan, not just the initial document requesting its approval. The pledge of the Boutique assets occurred as a result of the requirement of such a pledge by the SBA as a *precondition* of its guaranty of the loan, and it could reasonably be considered a part of the application.[7] No issue of surprise is involved, if only because from the time of the indictment (as re-enforced when the issue was raised pretrial by an overruled motion to dismiss it), Grugette was fully aware that the conduct charged consisted of his false representation that he had authority to pledge the assets of Boutique, as required for approval of the loan.

Accordingly, we find no merit to Grugette's arguments under the present circumstances, insofar as they depend on some technical distinction between Grugette's initial "application" for an SBA-guaranteed loan, and the documents submitted to fulfill a precondition imposed by the SBA before its final approval of the application.

### 2. Restitution and Equal Protection

Grugette next argues that the sentence imposed by the trial court violated equal

---

**7.** Grugette is incorrect in implying that this condition was imposed as some sort of afterthought by the SBA *after* the loan was made. In response to a pre-loan objection by the lending bank made to the SBA's exaction of this condition the SBA stated (*prior* to ultimate approval of the guaranty, which approval was

after Grugette's satisfaction of the Boutique-pledge condition), that it "included this condition because Craine's Boutique, Inc., is located within the same facility [as Craine's Furniture Company] and is approximately 50% owned by Mr. Louie Grugette." (Gov. ex. no. 6).

protection guarantees, since restitution was required in lieu of imprisonment regardless of Grugette's ability to pay. Grugette relies on *United States v. Jimenez*, 600 F.2d 1172 (5th Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 216, 62 L.Ed.2d 140 (1979). This decision held to be unconstitutional the requirement that the defendant Jiminez repay interpreter's and appointed counsel's costs to the government as a condition of his probation, in part because the repayment condition "does not provide that repayment will be excused if Jiminez is unable to pay." 600 F.2d at 1175.

*Jimenez* was in this respect based upon this court's holding in *Barnett v. Hopper*, 548 F.2d 550 (5th Cir. 1977), *vacated as moot*, 439 U.S. 1041, 99 S.Ct. 714, 58 L.Ed.2d 701 (1978). *Barnett* held that a ten-year probated sentence conditioned on the payment of a $2,000 fine and court costs, was a denial of equal protection, when Barnett was in fact imprisoned because he could not find the funds to pay the fine: "[T]o imprison an individual when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws." 548 F.2d at 554. *Barnett* was itself based on the Supreme Court's decisions in *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). These decisions literally held only that an indigent defendant was denied equal protection where, beyond any statutory provision or limit for imprisonment for the offense, he was required to be jailed solely because he could not find the funds to pay the fine or costs. *Barnett* viewed their rationale as implicating a denial of equal protection whenever an indigent was imprisoned because he was unable to pay a fine or costs imposed by the sentence, since those financially able to pay the fine selected by the sentencing judge as the appropriate penalty for the offense, or the costs, would be imprisoned, whereas those financially responsible could satisfy such monetary penalty imposed as otherwise appropriate.

At the outset, we note that, unlike the issue in the cited decisions, the issue before us does not concern imprisonment because a convicted defendant is unable to pay a fine or costs because of indigency. The issue before us, rather, concerns whether, as a condition of probation, a convicted defendant may be "required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had," 18 U.S.C. § 3651, a sentencing alternative specifically authorized by the cited statute. It well may be that the use of this sentencing alternative, which in a sense affords a defendant an opportunity to replace an imprisonment punishment by instead making restitution to the victim, does not implicate the same equal protection values that arise when, solely because of indigency, a defendant is nevertheless imprisoned even though the sentencing court has determined that the appropriate penalty should be only a payment of fine or costs. Also, it occurs to us, the use of restitution instead of imprisonment might be effectively aborted as a sentencing alternative, if equal protection values inhibited the use of restitution because it is available only to financially able defendants or to those willing to commit their future energies and earnings to reparation of their victim.

■ Nevertheless, on the present appeal, we need not reach this issue. Even if equal protection values are implicated when restitution is imposed as a condition of probation, Grugette does not present us with an issue ripe for review. He satisfied the restitution requirement, and he has not been imprisoned, nor is he on the face of the present record presented with any threat of imprisonment, as a result of any inability to make the required restitution. In addition, the trial court had before it a presentence report that indicated to the court that Grugette had assets that he could sell to satisfy his immediate debts and that made the restitution requirement feasible for him.[8]

8.  After a discussion among the court, Grugette, and the government, which focused on the pre-

sentence report, the court stated that it was not

### 3. Repayment of Actual Loss

Finally, Grugette argues that the order of restitution exceeded the authority of the trial court in that 18 U.S.C. § 3651[9] provides that the court may order restitution only for *actual* loss under the charge for which the accused is convicted. According to Grugette, the court had no evidence before it on which to base the amount of actual loss.

Our review of the record reveals that Grugette admitted that the SBA lost approximately $102,000 on the loan. The trial court required restitution in the amount of $50,000, apparently to reflect the fact that not all the loss was attributable to the assets of Craine's Boutique, which the jury found that Grugette wrongly pledged.[10]

### Conclusion

We have examined each of Grugette's contentions and we find Grugette's contentions to be without reversible merit. Accordingly, we AFFIRM his conviction and sentence.

AFFIRMED.

convinced that Grugette had no resources from which to satisfy the restitution requirement.

For suggestions that, at least under some statutory provisions permitting the restitution alternative, the trial judge should inquire as to the defendant's ability to make restitution before it is imposed as a condition of probation, see Annot., 73 A.L.R.3d 1240 (1976 & Supp. 1981).

**9.** 18 U.S.C. § 3651 provides in pertinent part:

While on probation and among the conditions thereof, the defendant—

. . . .

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had . . . .

**10.** *See* trial transcript 653–55.

The government argued that because the SBA claimed that the entire loan was contingent on Grugette's pledge of Boutique assets, restitution in excess of the assets of Craine's Boutique should be made. According to an unaudited balance sheet contained in the record as Gov. ex. 1–A, Craine's Boutique had assets of $153,200.61, liabilities of $127,584.90, and shareholders' equity of $25,615.71.