**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph E. KIRKLAND, III,**
**Defendant–Appellant.**

**No. 87–4542.**

United States Court of Appeals,
Fifth Circuit.

Sept. 6, 1988.

Rehearing Denied Sept. 29, 1988.

Thomas E. Royals, Jackson, Miss., for defendant-appellant.

Stephanie Duncan–Peters, Nicholas B. Phillips, Washington, D.C., George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before THORNBERRY, WILLIAMS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

## I.

This appeal challenges the denial of a motion under Fed.R.Crim.P. 35(a) to strike the restitution provisions from a partially-suspended sentence and the conditions of probation. Joseph E. Kirkland, III, was indicted under 18 U.S.C. § 1001 for concealing information relating to the use of a portion ($90,895) of a $1 million government loan extended to finance Kirkland's company's development of a housing project. Kirkland's contract with the Farmers Home Administration (FmHA) provided that FmHA would loan the development company money for use in construction, so long as neither Kirkland nor his company had an "identity of interest" with the general contractor named to work the project. Through several similar schemes (about which he testified at the trials of others, but for which Kirkland was not indicted), he had illegally obtained some $389,755 in undisclosed "consulting fees" from the contractor.

Kirkland agreed to plead guilty; in return, the government agreed, *inter alia*, to recommend that the district court order Kirkland to pay FmHA $200,000 in restitution. The plea agreement provided further that the district court could order restitution in any amount authorized by the provisions of the Victim and Witness Protection Act of 1982, now found at 18 U.S.C. § 3663.[1] After making the first install-

---

1. The renumbered provisions will be referred to for purposes of simplicity. The pertinent part of the Victim and Witness Protection Act of 1982 was found at 18 U.S.C. § 3579 at the time of events recounted here, but the amendment and recodification did not affect the provision

ment toward the $200,000, Kirkland challenged the restitution provisions of his sentence as illegal, because (1) entities such as FmHA cannot be a "victim" entitled to restitution; (2) it effectively provides for a double recovery for FmHA; (3) it violates the statutory scheme in adopting the government's negotiated recommendation for a restitutory amount exceeding the loss charged in the indictment; and (4) his due process rights are violated by requiring restitution exceeding the amount charged in the indictment. We AFFIRM.

## II. *Facts.*

In return for Kirkland's complete cooperation in connection with the on-going investigation of corruption among FmHA employees, agreement to testify against any government personnel brought to trial, and entry of a voluntary guilty plea on one felony count of concealing information relating to the use of federal loans, the government agreed to forego additional prosecutions for his involvement in other corrupt and fraudulent activities. In this Memorandum of Understanding, Kirkland agreed that he would subsequently elect one of two potential recommendations which the government would make to the court at sentencing. Both recommendations included the payment of substantial sums in restitution: $600,000 and no jail time under the first option, and $200,000 and some term of incarceration under the second.

Kirkland and his attorneys elected the second option, under which the government would make a recommendation of $200,000 in restitution and a maximum imprisonment term of one year. Pursuant to the Final Memorandum of Understanding, the

district court, despite the government's recommendation of $200,000, could order restitution in any amount authorized by what is now 18 U.S.C. § 3663.

Kirkland entered a plea of guilty to a single violation of 18 U.S.C. § 1001. Before the district court accepted that plea, the government recited the facts it would prove should the case go to trial. It alleged that Kirkland and Randall F. Aldridge were business partners in Marion Apartments, Limited (Marion). Kirkland signed a contract for Marion with FmHA to build a housing project. The contract provided that FmHA would loan Marion money for use in construction and that neither Marion nor Kirkland had an "identity of interest" with Eastline Corp., the general contractor named to work the project.[2] From the loan in question, Eastline paid Aldridge $90,865 in "consulting fees," which Aldridge promptly transferred to Kirkland. Thus, $90,865 in money intended for use in construction of the housing project ended up in Kirkland's pocket. Kirkland's failure to inform the FmHA that he had an "identity of interest" with Eastline violated 18 U.S.C. § 1001.

The district court accepted Kirkland's guilty plea and sentenced him to two years imprisonment, suspending one year and eight months, and ordering the remaining four months to be spent in a community center with work release. The court fined Kirkland $10,000, ordered a $50 special assessment, and required him to pay $200,000 in restitution to FmHA. The court placed Kirkland on five years' probation upon his release and made the restitution payment a condition of probation. The district court made restitution a part of the sentence pursuant to the Victim and Witness Protection Act of 1982, now found at 18 U.S.C.

in any manner relevant to Kirkland's restitutory liability. Pursuant to Pub.L. 98–473, Title II, c. II § 235(a)(1), Oct. 12, 1984, 98 Stat. 2031, after Nov. 1, 1986, sections 3579–80 are codified as §§ 3663–64. Section 3651 was repealed. Pub. L. 98–473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1987. The legislative history of Pub.L. 98–473 is contained in 1984 U.S. Code Cong. & Admin. News 3182. Further amendments to §§ 3663–64 were enacted by Pub.L. 99–646, Nov. 10, 1986, 100 Stat. 3593; Pub.L. 100–182, § 13, Dec. 7, 1987, 101 Stat. 1268; and Pub.L.

100–185, § 12, Dec. 11, 1987, 101 Stat. 1285. The legislative histories are recorded at 1986 U.S.Code Cong. & Admin.News 6139, for the 1986 amendments, and 1987 U.S.Code Cong. & Admin.News 2137, for the 1987 amendments.

2. Kirkland also certified previously that he did not have an identity of interest with the general contractors used on the prior projects from which he obtained government funds for his personal use.

§ 3663(a)(1), but the record does not indicate expressly whether the court made restitution a condition of probation pursuant to the precursor to section 3663(g) or pursuant to the now-repealed section 3651.[3] After paying the first installment of the restitution, Kirkland motioned the trial court under Fed.R.Crim.P. 35(a) to strike the restitution provisions from his sentence and to order FmHA to repay him. The trial court denied Kirkland's motion, and Kirkland then paid the balance of the restitutory order.

### III. *The Challenge.*

■ In reviewing the denial of a rule 35 motion, we examine only whether the sentence was illegal or whether the district court abused its discretion. *United States v. Hanyard*, 762 F.2d 1226, 1228 (5th Cir. 1985); *United States v. Ruffen*, 780 F.2d 1493, 1496 (9th Cir.), *cert. denied*, 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986). Kirkland argues that the restitution provisions of his sentence are illegal in that (1) FmHA is not a statutory "victim," (2) is being repaid and so has no loss, and (3) is due to receive an amount unconstitutionally in excess of the sum alleged in the indictment.

### IV. *The Restitution Provisions.*

Title 18 U.S.C. § 3663(a)(1) provides that a court may order a convicted person to pay restitution to any "victim" of the offense as part of the defendant's sentence. Section 3663(g) authorizes the court to make restitution a condition of probation, as did the now-repealed section 3651. Section 3664(a) lists relevant factors a court must consider in determining the restitutory amount, including any factors the court deems appropriate.[4]

### A. *FmHA Was a "Victim" with Statutory Losses.*

■ Non-human entities such as FmHA can be "victims" entitled to restitution under section 3663. *United States v. Caddell*, 830 F.2d 36, 39 (5th Cir.1987) (to FmHA under former section 3651); *United States v. Grugette*, 678 F.2d 600, 605 (5th Cir.1982) (SBA); *United States v. Gallup*, 812 F.2d 1271, 1276 (10th Cir.1987) (HUD); *United States v. Ruffen*, 780 F.2d 1493, 1496 (9th Cir.), *cert. denied*, 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986) (county welfare agency) (citing numerous cases from other circuits reaching the same result).[5] Kirkland has directed us to no contrary authority.

### B. *There Is No Double Recovery.*

■ Kirkland also argues, however, that Marion is paying back the loan to FmHA, including the $90,865, and that FmHA has, therefore, suffered no loss entitling it to restitution. But FmHA correctly asserts that it lost control of that $90,865, and that its money was used for an unauthorized

---

**3.** Though the trial judge did not specify upon which provision he conditioned probation, it is very clear that he was thinking solely in terms of the Victim and Witness Protection Act of 1982 in awarding restitution, and so would not have invoked § 3651, now repealed. Not only did the plea agreement and the sentencing order rest upon what is now § 3663(a)(1), but it is appropriate to treat the restitutory probation condition as imposed under subsection (g), because §§ 3663(g) and 3664 had (and have) broader language than did § 3651. This determination is not critical to this case, however, since the legal effect of a probation condition under either then-numbered §§ 3579(g) or 3651 is without difference to Kirkland's circumstance.

**4.** Section 3651, on the other hand, authorized restitution to an aggrieved party for "actual damages or loss caused by the offense for which conviction was had." This language was significantly more limited than that in the Victim and Witness Protection Act, and so it is appropriate to construe §§ 3663 and 3664 as encompassing, at the minimum, the full authority recognized in setting restitution under § 3651. *United States v. Ferrera*, 746 F.2d 908 (1st Cir.1984) (delineating differences between probation conditions imposed under the precursor to §§ 3663–64 of the Victim and Witness Protection Act of 1982 and those permissible under the now-repealed Probation Act, 18 U.S.C. § 3651, implied that deficiencies of proof of actual loss would not be fatal to restitutory probation conditions under the former, if it were applicable for offenses occurring before 1983).

**5.** *See* S.Rep. No. 532, 97th Cong., 2d Sess. 31, *reprinted in* 1982 U.S.Code Cong. & Admin. News 2515, 2537 (insurance companies among intended beneficiaries of restitution law).

purpose—Kirkland's personal benefit. Undeniably, control over one's money is a property right. *United States v. Fagan,* 821 F.2d 1002, 1010–11 n. 6 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). In *United States v. Herron,* 825 F.2d 50, 55 (5th Cir.1987), we held that interference with property rights causes a loss for which restitution is proper. Hence, the loss of control over the money constitutes an injury for which restitution is authorized, and FmHA correctly argues that the statute authorizing the loan program requires immediate repayment of the amount of any illegal kickbacks. *See* 18 U.S.C. § 1010.

Because Kirkland does not dispute FmHA's entitlement to repayment of its loans, but only questions FmHA's right to be "repaid twice," he emphasizes that this and all loans involved in the prior schemes are (1) business, not personal, debt and (2) are being repaid currently. He argues:

> Appellee [FmHA] has confused Mr. Kirkland, the individual Appellant, with his partnerships, legal entities which are obligated to repay the loans in question. The Government's repeated reference to what *could* happen *if* the partnerships defaulted on the loans[, ... distorts that the] existence or nonexistence of an injured party for purposes of restitution must be determined now. The courts cannot speculate that someone may become entitled to payment and therefore should be paid now. The Government is attempting to resolve an unascertainable future injury with a current remedy. This is not legally permissible.

Kirkland asserts that *Carpenter v. United States,* — U.S. —, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), *United States v. Fischl,* 797 F.2d 306 (6th Cir.1986), *United States v. Anglian,* 784 F.2d 765 (6th Cir.), *cert. denied,* 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986), and *United States v. Palma,* 760 F.2d 475 (3d Cir.1985), all "avoid[ ] the central issue of double repayment to FmHA in this case and the larger issue of whe[ther] restitution is proper in every case," because those cases all deal with appellants challenging the validity of their respective restitutions based upon disparate awards between co-defendants or similarly-situated individuals. However, Kirkland's arguments against these out-of-circuit cases in no way overcome the overwhelming authority they represent.

Our own precedents comport fully with the authorities listed above and have been cited in many of those cases. *E.g., United States v. Carson,* 669 F.2d 216 (5th Cir. 1982). Kirkland argues that *Carson* is completely distinguishable because that debt, in contrast to his owed to FmHA, had been discharged in bankruptcy, so that no one was paying on it. However, *Carson*'s order of restitution was clearly not based upon the lack of civil recourse against the defendant, but upon the "reforming discipline" of restitutory awards. *Id.* at 220.

Kirkland also relies heavily upon *United States v. Boswell,* 565 F.2d 1338 (5th Cir.), *cert. denied,* 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978). There, the defendants contested their guilt, went to trial, and were convicted of using false statements to persuade investors to place their money in a mortgage company from which they converted funds for their own use. As Kirkland notes, *Boswell* is our current statement of the law regarding the proper measure of damages to compensate an aggrieved party. As we stated in that opinion, an aggrieved party may collect only the amount due. While public policy prevents even victims of criminal conduct from recovering twice for harm done to them, Kirkland is totally incorrect and misleading in arguing that *Boswell* somehow precludes restitutory compensation for a victim when he is already receiving reparation from another source, such as insurance proceeds or a civil action against the defendant.

First, the remand in *Boswell,* for determination of losses incurred by investors in the mortgage company which the state had put into receivership, is not inconsistent with the treatment of Kirkland here, because the trial court's loss determination in *Boswell* was incomplete and premature:

The ultimate payment from the state receiver had yet to be determined, so the restitution properly owing could not be established to a certainty. Here, as in *Fagan* and *Herron*, FmHA's loss was the control of its funds, not merely the possible loss of repayment at issue in *Boswell.* Because the $200,000 Kirkland was ordered to repay is an established amount, there is no need for the trial court to hold additional proceedings to determine the exact amount of loss suffered by FmHA.[6]

In staying the restitution order pending the outcome of Boswell's appeal, the *Boswell* panel upheld the trial court's conclusion that restitution was appropriate;[7] ordering that the restitution was to be held in trust by the probation officer until such time as it became known whether the depositors would receive any recovery from the receivership is in no way inconsistent with the order here at issue, and was designed merely to guarantee against the potential double recovery. While Kirkland's repayment does give FmHA immediate repayment it *might* otherwise obtain as well, there is no double recovery because the losses recompensed—control and repayment versus repayment alone—are different.[8]

Kirkland's situation is easily distinguishable from the *Boswell* case. In *Boswell,* the investors could count on receiving a refund of their loss because they were relying upon two disinterested parties—the state receiver and the probation officer. In contrast, Kirkland asks this court to force FmHA to rely on his good faith to repay the loans. Because no funds are being held in trust by a disinterested party, FmHA will have to incur considerable expense to collect its funds if they are not returned through the probation officer. *See Grugette,* 678 F.2d at 605.

An additional distinction with *Boswell* is that the loss to FmHA and the gain to Kirkland continue to this day. Boswell was no longer able to reap financial benefit from his crime once he was convicted and sentenced. Because Kirkland received loan funds, however, he continues to receive an undeserved and illegally-obtained benefit for the lifetime of the loan, even though he may be serving a felony sentence. This is not in keeping with the intent of Congress to have a restitutory order serve as a reforming discipline, as FmHA's arguments and controlling case law amply establish.

Should Kirkland's contention prevail, any person who fraudulently obtained loan funds, whether from the government or from a private entity such as a bank, would be permitted to enjoy the financial fruits of his crime so long as he eventually repaid the loan. Obviously, as FmHA convincingly contends, those who defraud public or private lenders should not be allowed to continue the deprivation of the loss of financial control suffered by the creditors, let alone continue to enjoy the fruits of their fraud, "merely because those felons are capable of meeting their minimum payment obligations."

This court has held, subsequent to *Boswell,* that a defendant who obtains a government loan by the use of false statements and subsequently defaults on that

---

**6.** *See Grugette,* 678 F.2d at 604 (defendant's admission of the amount of the loss constituted sufficient support for the district court's restitutory order); *United States v. Whitney,* 785 F.2d 824 (9th Cir.1986), *modified,* 838 F.2d 404 (1988) (§ 3651 "actual losses" insufficiently documented, where indictment counts neither stated the fraud victim's losses, nor had the plea agreement stipulated some sum certain).

**7.** We found that while the order did not say so, the district court intended that Boswell would be refunded an amount equal to that recovered by the receiver. Because the state receivership had been in progress for the 16 months that the stay order had been in effect while the case was

appealed, the case was remanded so the loss could be specifically set. Presumably, the victims either had received, or certainly would receive, partial compensation from the receivership proceeding, and this was to be offset against the restitution amount.

**8.** FmHA's brief also stated that any restitutory amounts paid by Kirkland could be credited against the partnerships' total liability. While this statement referred solely to the $90,895 kickback from the $1,000,000 Marion loan, the additional $109,105 restitution would be applied against the total liability of some $3 million, either by agreement of the parties, or as a civil setoff when the debts approach retirement.

loan prior to sentencing, may be ordered to repay the amount immediately as a restitutory condition of probation, rather than be allowed to cure the default voluntarily. In *Grugette* we recognized that the victim, the Small Business Administration, was entitled to have the loan repaid by means of a restitutory order rather than by resort to civil process. Absent the coercion of the criminal sentence, the defendant was seen as unlikely to meet his loan obligations. 678 F.2d at 605.[9]

### C. *Propriety of the Stipulated Amount.*

Recognizing the weak underpinnings of the alleged double recovery, Kirkland argues, however, that he agreed only that the government would recommend $200,000 and that the district court was without authority to order such an amount even in light of his plea agreement. We now address that contention.

### 1. *Amount Reached by Agreement.*

■ Kirkland argues that if restitution is proper, the district court had authority to order it only for the loss alleged in the

indictment: that resulting from the loss of control over $90,865. The government contends that Kirkland agreed to the $200,000 figure after admitting to similar schemes through which he received government loan money for personal use; furthermore, FmHA contends he might default on those loans, making immediate repayment of the stipulated amount both necessary and proper.

The courts that have considered the issue agree that the amount of restitution may be established by a plea agreement.[10] *See Grugette,* 678 F.2d at 604 (defendant's admission of the amount of the loss constituted sufficient support for the district court's restitutory order under section 3651).

In *United States v. Hawthorne,* 806 F.2d 493 (3d Cir.1986), the court held that an order of restitution as a condition of probation under 18 U.S.C. § 3651 may exceed the amount of loss attributable to the counts of an indictment to which the defendant pleads guilty, *if* the defendant has been informed in plea negotiations or by the sentencing judge of the possibility that restitution will be required.[11] The court in

---

**9.** While there is the distinction with *Grugette* that the default had already occurred, and Marion Apartments is currently making timely payments on the loans from which Kirkland illegally took some $389,755, the elements present here, but significantly absent in *Boswell,* are as follow:

(1) The established amount, below what Kirkland illegally obtained, is not guaranteed by a neutral party, but merely by his wholly-owned and -controlled enterprises. Absent the coercive influence of the possible revocation of probation, there is little guarantee, beyond his good faith, that the loans will be repaid; and since, significantly, the repayment term will continue for many years after his period of probation expires, FmHA should not have to resort to civil process 40-plus years hence just because proper restitution was not awarded now.

(2) If restitution of the illegally obtained sums is not made, Kirkland and his businesses will continue to enjoy not only the loans, but use of the moneys over which Kirkland's schemes deprived FmHA of control.

(3) As in *Fagan* and *Herron,* and contrary to the circumstances in *Boswell,* where set-off for moneys returned to depositors by the receiver would affect the restitutory loss suffered by those investors, full repayment to FmHA by Marion Apartments will not recompense it for the loss of control of the $90,865, let alone for

portions of the other $298,860 (admitted to by Kirkland as a prosecution witness at another trial as illegally obtained from other projects), represented by the $200,000 restitutory order.

**10.** The Victim and Witness Protection Act does not require a trial or findings of fact concerning the amount of restitution unless there is a dispute about the amount. 18 U.S.C. § 3664(d) ("[T]he proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."). Although 18 U.S.C. § 3651 did not specify the procedure to be used in determining the amount of restitution, that procedure is set forth in 18 U.S.C. §§ 3663–64. Section 3663 permits the court to order restitution in lieu of or in addition to other penalties. Under § 3663(g), any restitution ordered shall be a condition of any probation term that is imposed.

**11.** *See United States v. Whitney,* 838 F.2d 404, 405–06 (9th Cir.1988) ("Our cases have held that the court will carry out a plea agreement that specifically determines the amount of restitution, provided the defendant freely and voluntarily consents to it, and the agreement has been fully explored in open court."), *modifying* 785 F.2d 824 (9th Cir.1986) (where the actual losses suffered were detailed in neither a negotiated

*United States v. Martin*, 788 F.2d 184, 189 (3d Cir.1986), had previously indicated that the rationale of *United States v. Woods*, 775 F.2d 82, 88 (3d Cir.1985), upon which *Hawthorne* was based, applies to restitutions ordered under the predecessor to section 3663. As has been mentioned, section 3651 was more limited than the provisions of the Victim and Witness Protection Act and so should be seen as the minimum statutory authority expanded by the successor compensation scheme. *Ferrera*, 746 F.2d at 908.[12]

In this case, there was no dispute about either the type or amount of restitution to be paid. Kirkland freely elected to enter into an agreement with the government whereby he was placed on notice that the government would seek $200,000 in restitution. At the time of sentencing, Kirkland and his attorneys were given an opportunity to address the court or to present testimony relevant to the sentencing. Neither Kirkland nor his counsel sought to refute the type or amount of restitution sought by the government. Indeed, he was only too happy to assure the trial court of his ability to pay the entire amount within a year. Defense counsel even reminded the court that restitution could be imposed as a condition of probation as further protection for FmHA. Subsequently, he willingly paid the initial $50,000 installment, and did not

even challenge the accuracy or fairness of the amount of restitution in his rule 35(a) motion to strike the restitution order.

### 2. Consideration of Unindicted Offenses.

Kirkland's belated effort to contest the accuracy of the amount is undercut by his own testimony at the Lester Howell trial before the same judge who sentenced him, at which he admitted that he had illegally obtained far more than $200,000 in government-funded "consulting fees." The combination of appellant's admissions under oath to the illegal receipt of, at least, $389,755 and his conduct at the sentencing hearing is as binding as a stipulation. Thus, his arguments as to other, extraneous offenses is unavailing.

### V. Power To Set a Restitution Sum Higher than Alleged.

This and other courts of appeals have held that district courts have authority to order a defendant to pay restitution in an amount greater than the loss alleged in the indictment. *See, e.g., United States v. Landay*, 513 F.2d 306, 307–08 (5th Cir. 1975) (restitution in amount exceeding loss alleged in indictment upheld under former section 3651 where convicted person had consented to a civil judgment in that amount).[13] Kirkland relies upon *United*

---

plea agreement nor in the indictment, restitution order had to be vacated). *See also United States v. Gering*, 716 F.2d 615, 625 (court might fix restitution in an amount greater than amounts alleged in indictment if the greater amount is "judicially established").

**12.** *See also* Note, Restitution in the Criminal Process: Procedures for Fixing the Offender's Liability, 93 Yale L.J. 505 (1984).

**13.** *Accord, Phillips v. United States*, 679 F.2d 192, 194 (9th Cir.1982) (restitution amount in guilty plea which exceeds amount of loss alleged in indictment upheld under former § 3651); *United States v. Van Cauwenberghe*, 827 F.2d 424 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) (same); *United States v. Suter*, 755 F.2d 523, 526–27 (7th Cir.), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985) (adopts *Phillips* approach); *United States v. Woods*, 775 F.2d 82, 88 (3d Cir.1985) (restitution allowed under former § 3651 for an amount greater than loss alleged in indictment to which defendant pled guilty);

*United States v. Hawthorne*, 806 F.2d 493 (3d Cir.1986) (although the defendant had not agreed to make restitution in amount greater than that alleged in the count to which he plead guilty, the district court could award restitution in greater sum); *United States v. Martin*, 788 F.2d 184, 189 (3d Cir.1986) (indicates that *Woods* rationale for § 3651 applies to restitution ordered under the predecessor to § 3663); *United States v. Sleight*, 808 F.2d 1012 (3d Cir. 1987) (amount of kickbacks alleged in indictment did not limit restitution awarded employer under former § 3651, since the defendant employee admitted to receiving additional kickbacks in greater amount than that ordered repaid); S.Rep. No. 532 at 31, 1982 U.S.Code Cong. & Admin. News at 2537 (courts authorized to use expeditious, reasonable means in determining restitution under what is now § 3663 where precise amount owed is unclear). *But see United States v. Black*, 767 F.2d 1334 (9th Cir.), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985) (where defendant was convicted on mail fraud indictment alleging

*States v. Brown,* 699 F.2d 704 (5th Cir. 1983), in which case the defendant contested his guilt and was convicted following a jury trial. The district court's restitutory order was premised upon information contained in a presentence report that was not made part of the record on appeal. Furthermore, we reversed Brown's conviction on one count because of insufficient evidence that he received any money whatsoever. For all of these reasons, we remanded to the district court for a determination of the specific amount of loss.

Kirkland's situation is entirely different. The loss determination for FmHA was arrived at through detailed plea negotiations that resulted in an agreement in which Kirkland readily acquiesced. Furthermore, the amount was significantly below the total he admitted under oath to having received for personal use from other government-funded housing projects. *See United States v. Harris,* 761 F.2d 394 (7th Cir. 1985) (no abuse of discretion in awarding restitution in an amount, as a sum certain, that did not exceed the government's actual losses resulting from the forgery).

Kirkland also relies upon an inapposite Second Circuit case, *United States v. Elkin,* 731 F.2d 1005 (2d Cir.1984), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1985), to which the Victim and Witness Protection Act of 1982 could not apply. The prosecutor there failed to prove loss in excess of the amount alleged in the indictment, and so the restitutory sum ordered was not premised upon any facts in evidence. However, even if the case more directly supported Kirkland's due process claim, the Second Circuit strained to distinguish the Ninth Circuit's *Phillips* opinion and our older *Landay* decision. As with the defendant in *Landay,* Kirkland entered a guilty plea and freely and voluntarily executed a consensual plea bargain, including an admission of amounts justifiably owed in restitution. The bargain having been made and Kirkland having received

specific losses of $46,250, but there was no plea agreement, or other consensual means for fixing a greater amount of restitution, the district court erred in ordering restitutory amount greater than that alleged in the indictment);

the benefit of that bargain, he is bound to it.

## VI. *Conclusion.*

Finding Kirkland's arguments legally and factual unsupportable, we AFFIRM.

*United States v. Runck,* 601 F.2d 968 (8th Cir. 1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980) (where plea agreement failed to authorize restitution, court without power to order an award).