UNITED STATES of America, Plaintiff–Appellee,

v.

Juan JIMENEZ, Defendant–Appellant.

No. 94–20885.

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1996.

Marjorie A. Meyers, Bennett, Secrest, Meyers, Houston, TX, for appellant.

Katherine L. Haden, Paula C. Offenhauser, Asst. U.S. Attys., and Gaynelle G. Jones, U.S. Atty., Houston, TX, for appellee.

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

Defendant, Juan Jimenez and his codefendant, Christopher D'Cunha, were each convicted of one count of conspiracy to commit mail fraud and nine counts of mail fraud after a joint trial. Jimenez was sentenced to 18 months imprisonment, 3 years supervised release and $182,062 in restitution payable to Sphere Supply Inc. (Sphere), the victim of the fraud. Jimenez appeals his conviction and sentence.

Sphere purchased parts, equipment and expendables to support oil drilling operations for Santa Fe International, Inc., Sphere's parent company. D'Cunha, a buyer employed by Sphere, first met Jimenez while Jimenez was working for Aurora Pump Company. In time, Jimenez left Aurora and formed Tex–Quip Inc. Jimenez continued to sell pumps to Sphere and others.

D'Cunha approached Jimenez with a proposal to form a corporation to do business as six different companies selling oilfield equipment and supplies. Jimenez agreed. JCI Inc. was formed and six related companies were started. The registered owners of the JCI companies were the wives of Jimenez and D'Cunha. The companies had different telephone numbers which were manned by an answering service and different addresses which were either post office boxes or the residences of Jimenez family members. A fictitious contact person was created for each company for sales made to Sphere.

D'Cunha then sought involvement in Tex–Quip. D'Cunha was paid $2800 per month by Tex–Quip and an agreement was signed that gave D'Cunha and Michael Reece, a Tex–Quip salesman, ownership interests in a related company, Tex–Quip Supply Inc. D'Cunha, his wife and his separate company, A–1 Investments, received funds from both Tex–Quip and Tex–Quip Supply. Approxi-

mately 40% of Tex–Quip and the JCI Companies' revenue during the three year course of the scheme came from sales to Sphere.

Jimenez raises five points of error: (1) insufficient evidence of intent to defraud, (2) erroneous admission of an out-of-court statement by D'Cunha, (3) improper award of restitution, (4) erroneous limitation of cross-examination, and (5) government's use of preemptory strikes in a racially discriminatory manner. We affirm the convictions but vacate the sentence because the award of restitution was improper.

## I. Sufficiency of Evidence of Intent to Defraud.

Jimenez argues that the government presented insufficient evidence of the specific intent to defraud required by 18 U.S.C. §§ 371 and 1341. To overturn the convictions on a sufficiency of the evidence challenge, we must find that a rational trier of fact could not have found that the government proved the essential elements of the crime charged beyond a reasonable doubt. *United States v. McCord*, 33 F.3d 1434 (5th Cir.1994). We must view the evidence in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury. *Id.*

Intent to defraud requires an intent to (1) deceive, and (2) cause some harm to result from the deceit. *United States v. St. Gelais*, 952 F.2d 90 (5th Cir.1992) (wire fraud).[1] Intent to defraud exists if the defendant acts knowingly with the specific intent to deceive for the purpose of causing financial loss to another or bringing about some financial gain to himself. *U.S. v. Rico Industries, Inc.*, 854 F.2d 710 (5th Cir.1988). Conspiracy to commit mail fraud requires proof of intent to commit mail fraud. *United States v. Sneed*, 63 F.3d 381 (5th Cir.1995). Jimenez admits that he used fictitious business contact names and fictitious business addresses. The evidence also shows that he engaged in the venture to make a profit. This evidence is sufficient for a rational trier of fact to have found that Jimenez had the

---

1. The wire fraud and mail fraud statutes contain similar language and are governed by the same analysis. *United States v. Loney*, 959 F.2d 1332 (5th Cir.1992).

intent to deceive Sphere for the purpose of bringing about financial gain to himself.

## II. Admission of Nontestifying Codefendant's Out-of-Court Statement.

■ Apparently in an effort to show that the money paid to D'Cunha was not a kickback, Jimenez testified that D'Cunha was a true partner who provided expertise and business leads to their venture. On cross-examination, Jimenez testified that he would be surprised if D'Cunha said that D'Cunha brought only Sphere business to the table. D'Cunha did not take the stand or put on any evidence on this issue. During rebuttal, the Government introduced a redacted out-of-court statement given by D'Cunha during Sphere's initial investigation of the scheme:

DH [2]: Okay, other than your wife's involvement as supposedly a 50 percent owner, someone who has received a salary and someone who has received some monies in addition to that salary, what involvement have you had with JCI EQUIPMENT?

CD: The business with SPHERE, the orders, writing the orders and ah material being supplied, given.

DH: And what did you bring to the table other than more business with SPHERE?

CD: That's all.

The court instructed the jury that the statement could be considered against only D'Cunha and not against Jimenez.

■ Jimenez argues that despite the court's limiting instruction, the admission of the statement violated his right under the Confrontation Clause to cross-examine witnesses against him.[3] A defendant is deprived of this right when a codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Court reasoned:

[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Bruton*, 391 U.S. at 135–36, 88 S.Ct. at 1627–28 (citations omitted).

The *Bruton* rule, however, is a narrow one that applies only to statements that directly implicate the defendant without reference to other admissible evidence. *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *United States v. Espinoza–Seanez*, 862 F.2d 526 (5th Cir.1988). In *Richardson*, the Court found that a codefendant's extrajudicial confession that was carefully redacted to eliminate the defendant's name and any reference to her existence did not fall within *Bruton*. *Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709. Similarly, in *Espinoza–Seanez*, this Circuit held that a confession acknowledging the existence of a co-conspirator without naming the defendant did not directly implicate the defendant. *Espinoza–Seanez*, 862 F.2d at 533–35. We treat D'Cunha's statement no differently.

The statement, standing alone, does not directly implicate Jimenez. D'Cunha admits that he was paid by Tex–Quip, that he had an ownership interest in the JCI companies, and that he brought only Sphere business to the table, but nothing in the statement connects Jimenez to the companies. Jimenez's connection to the companies was proven by other evidence including Jimenez's own testimony. The statement does not directly implicate Jimenez on its face and therefore, is not covered by *Bruton*.

---

2. DH is the attorney for Sphere; CD is Christopher D'Cunha.

3. In his brief, Jimenez argues that the statement rebutted nothing presented by D'Cunha and thus, was outside the scope of rebuttal. The issue was conceded by defense counsel at oral argument however.

Jimenez argues that because the statement was introduced during rebuttal to impeach Jimenez's testimony, the jury could not follow the court's limiting instruction. Therefore, the rationale for the *Bruton* exception, the jury's inability to follow the instruction, compels an extension of *Bruton* to the facts of this case. We disagree.

While presentation of the statement during rebuttal may make the evidence more prominent in the jurors' minds, we see no reason why the jury would be incapable of disregarding the statement and considering the case against Jimenez without considering the statement. We decline based solely on the phase of trial in which the evidence was introduced to create another exception to the general assumption that juries follow instructions.

III. Restitution.

■■■ Jimenez challenges the legality of the restitution order. We review *de novo*. *U.S. v. Reese*, 998 F.2d 1275, 1280 (5th Cir. 1993).

The Victim and Witness Protection Act (VWPA) permits a court to order a defendant to pay restitution to any victim of a Title 18 offense. 18 U.S.C. § 3663 (Supp.1995). In determining whether to award restitution and the amount payable, the court shall consider: (1) the amount of the loss sustained by any victim as a result of the offense, (2) the financial resources of the defendant, and (3) the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate. 18 U.S.C. § 3664 (Supp.1995).

The district court, relying on the Sentencing Guidelines[4] and not the VWPA, found that Sphere suffered a loss and calculated the amount of the loss as Jimenez's gain from sales to Sphere. Jimenez contends that because the prices of the equipment sold to Sphere were at or below market price, Sphere suffered no loss and cannot be awarded restitution under the VWPA. We agree.

Section 2F1.1 deals with determination of loss for purposes of determining length of sentence not amount of restitution. *United States v. Badaracco*, 954 F.2d 928, 942–43 (3d Cir.1992).

The government argues that kickbacks to D'Cunha are loss for the purpose of the VWPA relying on *United States v. Rico Industries, Inc.*, 854 F.2d 710 (1988). In *Rico*, however, the existence of kickbacks was proof of fraud, not of loss under the VWPA. The court went on to affirm the restitution order but only to the extent of the victim's actual damages. *Id.* at 714.

The government also argues that Sphere suffered a loss for which restitution is appropriate because Sphere was deprived of the use of its money when the money was used for an unauthorized purpose, i.e. payments to D'Cunha. *See United States v. Kirkland*, 853 F.2d 1243 (5th Cir.1988). In *Kirkland*, the defendant was a developer who received loans from the Farmers Home Administration (FmHA) for a housing project on the condition that he would have no "identity of interest" with the general contractor for the project. The defendant violated that condition when he received consulting fees from the contractor. The defendant pled guilty to concealing information relating to the use of the government loan and was ordered to pay restitution. The defendant objected to the restitution order arguing that the FmHA had suffered no loss because the loan was being repaid. The court held that the loss of control over the money constituted an injury for which restitution was authorized. *Id.* at 1247.

*Kirkland* is different from this case in two respects. First, in *Kirkland* money was the commodity, the object of the transaction. Therefore, the loss of control of money was an injury for which restitution could be ordered. Here, money was simply an instrument of exchange. Sphere wanted quality equipment at a fair price and does not dispute that it received quality equipment at a

---

4. The district court relied on the Sentencing Guidelines § 2F1.1, Application Note 8 which states in part:

For the purposes of subsection (b)(1) [of § 2F1.1], the loss need not be determined with

precision. The court need only make a reasonable estimate of the loss, given the available information ... The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss.

**100**

fair price. Second, the *Kirkland* defendant's argument that repayment of the loan prevented any finding of loss is based on a future event. Here, future events play no role. Sphere has received the equipment and material and realized the benefits associated with that equipment. *Kirkland* is not controlling.

We find *U.S. v. Hayes*, 32 F.3d 171 (5th Cir.1994) persuasive. In *Hayes*, the defendant pled guilty to possession of stolen mail (three credit cards), was sentenced to six months imprisonment and was ordered to pay $3,255 in restitution to the credit card companies. This court recognized that the credit card companies did not suffer loss from the defendant's possession of the cards and vacated his sentence.[5] *Id.* at 173. *See also United States v. Cobbs*, 967 F.2d 1555 (11th Cir.1992) (possession of access device caused no loss to victim and could not support restitution award) and *United States v. Domincio*, 765 F.Supp. 1259 (E.D.Va.1991) (restitution improper where victim has suffered no real loss).

█ While gain to a defendant is sufficient to show an intent to defraud, it is not sufficient alone to invoke a court's authority to order restitution under the VWPA which requires a real or actual loss to a victim. As to Jimenez, Sphere suffered no loss. We therefore vacate the sentence and remand for resentencing keeping in mind that the district court imposed no fine in light of the restitution order. *Hayes*, 32 F.3d at 173; *United States v. Aguirre*, 926 F.2d 409 (5th Cir.1991).

IV. Limitation of Cross–Examination.

Defendant argues that his cross-examination of Richard Hoffman, a Sphere executive testifying for the government, was erroneously restricted. Defense counsel notified the court before trial that he intended to cross-examine Hoffman regarding Sphere's demands for civil damages from Defendant for the purpose of showing motivation for the criminal prosecution and bias on the part of Mr. Hoffman. The court ruled that the motivation for the prosecution was irrelevant to Defendant's guilt or innocence but that the evidence could be relevant to show witness bias provided the proper predicate was laid. At trial, defense counsel made no attempt to lay a foundation to show witness bias or prejudice. He simply submitted correspondence between the parties regarding negotiations in the potential civil matter as an offer of proof. Because counsel did not attempt to lay a predicate for showing bias and made no other attempt to elicit the testimony, there was no exclusion of evidence or limitation of cross-examination.

V. Batson Challenge.

The Prosecutor struck one African–American and two Hispanic venirepersons with three of her preemptory strikes although three African–American and two Hispanic venirepersons were empaneled. Despite the court's finding that Defendant did not make a prima facie showing of discriminatory intent, the Prosecutor gave race neutral reasons for the strikes and the court further found that the Government met its burden of providing race-neutral explanations for the strikes in accordance with *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). These findings are not clearly erroneous. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

█ Defendant challenges the Prosecutor's reasons by arguing that similarly situated jurors were not eliminated. *United States v. Bentley–Smith*, 2 F.3d 1368, 1373–74 (5th Cir.1993). The challenge is without merit.

The Prosecutor struck the African–American venireperson because he was too young, uneducated, had not worked in a company setting and had no religious preference. The defense compared him to three other jurors who each possessed at least one of the named qualities. The seated jurors also possessed

---

**5.** The primary concern in *Hayes* was whether the restitution order could include losses other than those directly tied to the offense for which the defendant was convicted. Additionally, the defendant claimed that he purchased the credit cards from an acquaintance and had not used the credit cards although he planned to do so.

other qualities the Government found redeeming. Simply put, the jurors were not similarly situated.

■ Defendant makes similar arguments with regard to the two Hispanic venirepersons. The first was struck due to potential bias against the prosecution because a close relative was convicted by federal prosecutors. Defendant compares her to two jurors with DWI convictions but the convictions did not involve federal prosecutors. The second Hispanic venireperson was struck because he was unhappy with the prosecutions in two cases where close family members were killed. The juror who Defendant argues is similarly situated suffered a similar tragedy but expressed no dissatisfaction with the prosecution in that case. Defendant has failed to show discriminatory intent.

We AFFIRM Jimenez's conviction but VACATE his sentence and REMAND for resentencing.